## QUICK *v.* GOODWIN and Others.

A testator directed, by his will, that his real estate should be sold by his executors, for the highest and best price for cash, or on such credit, and the amount secured in such manner, as is usual in like cases, and that the proceeds should be distributed among certain persons. He appointed two sons and a son-in-law, executors. On May 20, 1851, about two thousand eight hundred acres of said lands were sold at public auction, in parcels of upward of three hundred acres, and purchased chiefly by the adult heirs, at about ten dollars per acre, and said executors purchased over eleven hundred acres thereof. In May, 1854, the executors filed their complaint against the other heirs, showing the facts, and praying confirmation of their purchase, or that their land be re-offered for sale, and if it would not sell for any more than they were to give, and the value of their improvements on it, that then their purchase should stand and be confirmed. The Court, on a trial, found the value of their improvements and ordered a re-sale, but no bid was received therefor, and, in July, 1854, their original purchase was confirmed. On December 20, 1859, one of the heirs sued said executors for an alleged balance due on his distributive share, and averred that the executors had used his legacy, etc., and claiming interest, etc. Demurrer sustained to the complaint in January, 1860, and amendment filed, charging that said executors, and other sons and daughters of the testator, had fraudulently combined, etc., and were each to bid in certain parcels of said land, and not to bid against each other, and to prevent others from bidding by representing that they would get into litigation, etc.; and said executors, in execution of said fraudulent purpose, offered said lands in large parcels to suit each of said heirs, and required cash down at said sale, by reason whereof said lands were purchased for much less than their value, and that when said lands were re-offered in 1854, the same frauds were repeated, and certain persons were paid for not bidding, etc.; and the plaintiff further averred, that, in 1851, he was a minor, and became of age in 1854, and was never apprised of said frauds until the winter of 1859–60. Prayer, that the sale be set aside, etc.

*Held*, that the proceedings had in 1854, for the confirmation of said sales, were, in substance, such an adjudication as falls within the provisions of the code for the review of judgments, 2 R. S. 165, and the remedy there provided should have been pursued.

*Held*, also, that section 219, 2 R. S. 77, does not apply to cases where frauds have been committed in obtaining judgments, but rather to the matter which is the foundation of the action to obtain the judgment, and not the proceedings or judgment based thereon.

*Held*, also, that fraud in obtaining a judgment may be shown as a cause for review, but it must be done within the time and in the manner prescribed in the statute.

APPEAL from the *Warren* Common Pleas.

HANNA, J.—Prior to 1851, *James Goodwin* died testate, leaving seven children, and one set of grand-children, as well as a widow. Several specific bequests were made, after which the will provides as follows:

"I also order and direct, that all the real and personal estate of which I shall die seized or possessed, (except the bequests heretofore named,) shall be sold by my executors, for the highest and best price for cash, or on such credit, and the amount secured in such manner, as is usual in like cases, to insure the full and punctual payment thereof, and I direct and ordain that the amount of money raised by the disposal of real and personal estate hereinbefore ordered by me to be sold or otherwise disposed of, to be divided in the following manner, to-wit: To *Thomas Goodwin, Harrison Goodwin, John W. Goodwin, Abner Goodwin,* the heirs of the body of *Elizabeth Quick,* deceased, *Indiana Clark* and *Martha Lyons,* each, one equal share and share alike, among the sons and daughters of my body, and the amount devised, or share bequeathed, to the heirs of the body of *Elizabeth Quick,* deceased, shall be paid by my executors to them as they become of age. The share bequeathed to *Martha Lyons,* and the heirs of her body, is, by my executors, to be laid out in

lands for their use and benefit." *James* and *John W.*, sons, and *Clark*, a son-in-law, were appointed executors.

Such proceedings were had by said executors, that, on the 20*th day of May*, 1851, said lands, to the amount of about twenty-eight hundred acres, were sold at public sale and bid in by the adult heirs of said decedent, for about ten dollars per acre, in parcels of near three hundred acres, and upward, to each one, except *John W.* That the executors purchased, altogether, about eleven hundred acres of said land, at said sale.

Afterward, at the May term, 1854, of said Court, said executors filed a complaint against the balance of said heirs, showing the above facts, and alleged that they had made improvements, etc., and praying the Court, as doubts had arisen, etc., to confirm their purchase, or, that said property might be again offered for sale, and if it would not bring any more than they were to pay for the same, and the value of the improvements, that it might be confirmed to them, etc. It appears that the Court found the value of the improvements, and ordered the property to be offered in the parcels in which it was then held by said executors, one of them holding seven hundred acres, etc. Afterward they reported that it had been offered and no bid received, and, thereupon, on the — day of July, 1854, said purchases were confirmed to said original purchasers.

On the 20*th day of December*, 1859, the appellant, *John W. Quick*, one of said grand-children, brought suit against said executors for an alleged balance due him of his distributive share, averring that they had used the said legacy, etc., and closing interest and profits, etc. A demurrer was sustained to the complaint, at the *January* term of said Court, for the year 1860, and, thereupon, an amendment was filed, which, among other things, charged fraud in the sale of said lands. The complaint was several times further amended, until it ultimately set forth the facts above set out, and charged that said

executors, and the other sons and daughters of said decedent, had fraudulently combined, etc., among themselves, to each bid off certain parcels of said lands, and not bid against each other; and that they also confederated together to prevent other persons from bidding on said lands, by representing that they would get into litigation, etc., and by bribery, etc. That by said agreement, said executors offered said lands in large parcels, to suit each of said heirs, and required cash down at said sale; that, in consequence of these various acts, said lands, purchased by said persons, were so purchased for twenty-eight thousand dollars, when, in fact, they were worth fifty thousand, and would have brought that much if offered in small lots, and on reasonable time, and clear of the appliances used, etc.; that at the reoffer of said lands, purchased by the executors, in 1854, said frauds were again resorted to, and, in addition to said lands being offered in such large parcels, it was given out that purchasers would get into litigation, and B and M were paid one hundred dollars if they would not bid, when they had intended and otherwise would have run said lands up to fifteen dollars per acre, etc.; that said appellant was a minor at said sale in 1851, and arrived at full age during the pending of the application of said executors to procure the confirmation of the sales made to themselves; and that he has been but lately, during the winter of 1859–60, apprised of the fraud perpetrated against his rights; praying that the sale may be set aside, and the lands again sold by a disinterested commissioner, " or that, inasmuch as lands, since the time of said sale, have, from fortuitous causes, become depreciated in value, said executors may be decreed to pay the difference between the actual value of said lands, when so pretended to be sold, and the price," etc.

There was a demurrer overruled to this complaint, and by cross errors assigned, and brief filed, the appellees press this as the only point upon which they rely; urging that it

is shown that the remedy of the appellant, if any he ever had, is barred by the statute of limitations.

Waiving any discussion of the manner in which it was thus attempted to raise the point, for it was afterward raised by answer, we will proceed to examine it.

By the appellant it is urged that this case falls under the fourth subdivision of sec. 210, p. 75, 2 R. S., to-wit: " The following actions shall be commenced within six years after the cause of action has accrued, and not afterward: * * * Fourth, for relief against frauds." And that, as this form of action was adopted immediately upon the discovery of the fraud, it is in time, within the meaning of sec. 219, *Id.*

To this it is answered, in argument: *first*, that the section first quoted has no application, because it has reference only to suits to obtain judgments, not to proceedings to be relieved from judgments after they have been obtained; that such proceedings are governed by other statutes, namely: those governing applications for new trials, and to review judgments, under neither of which was this suit in time; and that the application must be in conformity with some statute; to which proposition is quoted *Woolly* v. *Woolly,* 12 Ind. 663, and *McQuigg* v. *McQuigg,* 13 *Id.* 296. And, *second*, if they are wrong in this, that still the plaintiff does not make a case of concealment, entitling him to relief.

As to the first point made by appellees: There being sufficient facts alleged in the complaint, it is clear that the plaintiff, even under sec. 210, quoted, was entitled to proceed to obtain relief, having commenced within six years, unless the order of the Court, made in 1854, confirming said sales, should be considered as interposing a bar in the way, by which he was compelled to seek his remedy under some other law. We do not find from the record, that the property had been, in 1851, sold by order of the Court; nor was such sale then confirmed. In 1854, upon the application of the executors, heretofore noticed, the sales to persons, other

than said executors, were confirmed; and, as to said executors, the re-offer, report, and confirmation, were made as before alluded to.

Were these orders of confirmation, under the circumstances, judgments, within the meaning of the statute on the subject of proceeding to review? 2 R. S. 165. And if yea, then does sec. 219, as to concealment, etc., have any application to a proceeding, under that statute, to review?

We are of the opinion, that the order and conclusion of the Court, arrived at upon the application in 1854, as then entered, were, in substance, such an adjudication as falls within the provision and definition of the statute, 2 R. S. 165; and, following the decisions above cited, from 12th and 13th Ind. R., we are further of the opinion, that the remedy pointed out by the statute should be pursued in the form and manner therein indicated. This might have been done by application for a new trial, or for a review of, or appeal from, the said adjudication, within the time fixed by the legislature. As the complaint showed that this had not been done within the time, it was defective, unless sec. 219 saved it, under the allegations of concealment made therein. This section, we think, has application to proceedings in transactions other than judgments, and was not intended to apply in cases where frauds were perpetrated in obtaining judgment. In other words, the matter which is the foundation of the action to obtain the judgment, and not the proceedings, or judgment based thereon, are affected by this provision of the statute. We suppose, under an application to review, etc., fraud in obtaining a judgment may be shown, as a cause, etc., but three years appears to be fixed as the limit within which such proceeding shall be instituted, and the act in relation to reviews contains no clause similar to sec. 219.

The demurrer to the complaint should have been sustained; and, as the judgment was for the plaintiff upon the

hearing, as to a part of said lands, we think it ought to be reversed.

*Per Curiam.*—The judgment is reversed, with costs, and the cause remanded for further proceedings.

*Joseph H. Brown* and *James Park*, for the appellant.

*McDonald* and *Roache*, for the appellees.