Earle v. Earle.

No. 10,573.

EARLE v. EARLE.

DIVORCE.—*Setting Aside Decree.*—A decree of divorce can not be reviewed under the statute authorizing the review of judgments in ordinary civil actions.

SAME.—*New Trial.—Practice.*—A new trial in an action for a divorce can not be had after the term at which the decree may have been rendered, under the statute providing for new trials in other civil causes.

SAME.—*Judgments, Power of Courts to Set Aside.*—The power of courts to set aside judgments are not restricted by the statutory provisions in relation to the vacation of judgments to the causes and modes therein specified, to the exclusion of all other causes and modes.

SAME.—*Fraud.*— Courts have power, in a direct proceeding, to set aside and vacate judgments obtained by a fraud upon the court, and this power extends to decrees of divorce. *McQuigg* v. *McQuigg,* 13 Ind. 294, and cases following it, overruled.

SAME.—*Diligence.*—It is necessary, in order to set aside a decree of divorce on account of fraud in obtaining it, that the party complaining should commence the action therefor without unreasonable delay upon discovery of the fraud, so that innocent third parties may not suffer.

SAME.— *When Court Will Not Set Aside.*—A decree of divorce, valid upon the face of the record, will not be set aside for fraud if the party asking it, with knowledge of the fraud, has delayed bringing an action therefor for nearly fifteen years after the decree, the other party having entered into a marriage with an innocent party, and having children born of such marriage.

JUDGMENT.— *When Void and Voidable.*—A judgment by a court of competent jurisdiction is not void in a legal sense unless the thing lacking or making it so is apparent upon the face of the record. If the infirmity do not so appear, the judgment is voidable but not void.

From the Kosciusko Circuit Court.

*E. B. McClanahan* and *W. S. Marshall,* for appellant.

*J. Bradley* and *J. H. Bradley,* for appellee.

ZOLLARS, J.—This is a proceeding instituted by appellant to have a decree of divorce, procured by appellee, set aside and vacated.

The question for decision is presented by the ruling of the court below in sustaining a demurrer to the complaint. The following abstract of the complaint, as we find it in the brief

of counsel, with a few additions, is sufficient for the purposes of this opinion:

Appellant filed her bill in this cause in July, 1882, stating, among other things, that on the 19th of April, 1854, in the county of Lake and State of Indiana, she intermarried with appellee, and with him lived until August 1st, 1866, when the appellee causelessly filed his petition in the common pleas court of Lake county, Indiana, for a divorce; that, on September 4th, 1866, a rule was had on appellant herein to answer, and that, from a transcript of the record, it appears that she appeared and withdrew her appearance, when she was defaulted; that an affidavit was filed to set aside the default and continue the cause; that the affidavit is missing, and that on January 7th, 1867, the cause was dismissed on motion of plaintiff; that of this proceeding appellant never heard until within a few days before the filing of the bill in this cause; that, on April 9th, 1867, appellee filed another like petition in the same court; that summons issued and was, on April 25th 1867, returned, showing personal service, and that proof was taken and preparations were made to try this cause; and that about August 1st, 1867, three months later, appellee, in the circuit court of Kosciusko county, filed his third petition for divorce, identical in its allegations with its predecessors, one of which was pending, desertion being the ground alleged. On September 16th, 1867, the second bill, filed on April 25th, 1867, was dismissed. Summons issued on the filing of the petition in Kosciusko county, on August 1st, 1867, and, as it is fraudulently pretended and asserted, said summons, on August 9th, 1867, came into the hands of the sheriff of Lake county, and a false, fraudulent, and pretended return is made in these words: " By leaving a certified copy at the last named place of residence of Miriam H. Earle. Signed Andrew Krinbill, sheriff of Lake county, per J. R. Uptigrove, deputy." That appellant was never served personally or constructively; that she did not appear, nor did she know of the pendency of the proceeding in Kosciusko county until long after the same

had terminated in the rendition, upon default taken, of a void judgment of dissolution; that the said Uptigrove, who signed his name to said return as "deputy," was not, at the time of such service, a regular deputy sheriff of the county and State aforesaid, and not being such, that he had no right under the laws of Indiana to serve such process, and that said sheriff of Lake county had no power by deputation to clothe him with such authority; that several months after said void decree was rendered, she first learned that said pretended deputy had the summons in his possession, and knew if he were such deputy that he could easily get actual personal service on appellant, but that, in pursuance of a fraudulent scheme and conspiracy, the said alleged deputy caused the movements of appellant to be watched, so that when she should absent herself from her home he would then go and pretend to leave a copy at her residence; that said fraudulent and pretended deputy received said summons issued about August 1st, 1867, into his possession on August 2d, 1867, and so continued to hold the same until August 9th, the day of said pretended service and return; that from August 1st to the 9th, appellant was continuously at her home, as said pretended deputy well knew, but that while being watched by said pretended deputy, she, on August 9th, left her home to visit an invalid friend living many miles distant, and that, intending and designing to evade appellant, said pretended deputy did repair to her house and was seen to place a paper on the door nob, and shortly thereafter, on same day, to return and remove and carry away the same paper, and before her return, he knowing she had not returned; that appellant, on her return, entered her home through that door, and there was no paper of any kind there; that she did not learn of this until long after the termination of said suit; and that he fraudulently removed said paper to prevent her from receiving notice; that the suit in Lake county for the same cause was pending and being prosecuted in aid of the same fraudulent design; that she was duly summoned in the Lake

county suit; that she entered her appearance; that she was served with notice by appellee to take depositions, which were taken and filed in Lake county; that on May 6th, 1867, she caused notice to take depositions to be served on appellee; that the cause was continued; that she took her depositions, which were filed in the cause; that she watched closely said cause; day was set for the trial, which did not take place, because, on September 6th, 1867, appellee caused the same to be dismissed; that on September 3d, 1867, three days before the dismissal, he had obtained a decree of divorce in the case in Kosciusko county, in a different circuit from the one to which Lake county belonged; that the suit in Lake was merely a part of his scheme and conspiracy to mislead and defraud, and that in twenty-six days after he filed his bill at Warsaw, in Kosciusko county, he obtained the fraudulent judgment (which the bill in this case is filed to impeach); and not only this, but that appellee was not a resident of Kosciusko county when he filed his bill or obtained his decree; that he and appellant were both then residents of Lake county; that with intent to deceive and defraud the court by the false and fraudulent return to the summons, he concealed from the court in Kosciusko county the pendency of the suit in Lake county, well knowing, also, that appellant had no knowledge or notice of the proceedings in Kosciusko county, whereby the proceedings in Kosciusko county are void *ab initio;* that appellant still claims appellee as her husband; that appellee is living now with another woman, whom he claims as his wife; that by her he has living two illegitimate children, and that by appellant he has two children—one an invalid daughter twenty-six years of age, and a son who has just attained his majority; that she has lived in poverty and tears since the said decree was obtained, and that since then appellee has never contributed one cent to her maintenance and support, although he has all along possessed a large amount of property.

Whether all or any of the matters stated in the complaint are, in fact, true, we can not tell. The demurrer admits the

Earle *v.* Earle.

truth of all well pleaded, and we must deal with the case upon that basis. The complaint presents a case of a deliberate determination to defraud and injure appellant, and to prostitute the courts of the State in the accomplishment of that end. The court, in Lake county, which had jurisdiction of the parties, was used as a decoy to attract and fix the attention of the wife, while the court in Kosciusko county, by a false and fraudulent return to a summons, and false statements as to the residence of the appellee, if by no other means, was misled and deceived into the rendition of a decree of divorce, thus breaking up and wrecking one family, and making it possible for innocent third parties to suffer. The State and its people have suffered not a little in their reputation in the past on account of the supposed facility with which divorces have been procured. The fault, if there has been fault, has not been on the part of the courts, the people or the laws, but in the abuse of them by designing and unscrupulous litigants.

The case, as presented in the complaint, is one calling loudly for relief, if it may be granted in accordance with well settled rules of the law.

It is a principle as old as the laws of civilized communities, that a party shall not be condemned without a hearing or notice, and thus an opportunity to be heard. It is true, that in this State, the policy has been not to review or disturb decrees of divorce. This rule has been adopted by the Legislature and the courts from considerations of public policy. But such considerations do not sanction the upholding of decrees rendered in fraud of the courts. Every consideration demands that fraud upon parties shall be rebuked; that the laws shall be honestly and faithfully administered, and that the courts, which are the conservators of society, shall purge their records of all judgments and decrees procured by deception, fraud, or perjury. While considerations of public policy may forbid the review of decrees of divorce, they apply only when decrees are, in fact, rendered, the court

having jurisdiction of the subject and of the parties. Public policy demands that the homes of the land shall be preserved intact. These homes constitute the foundation upon which rests the fabric of society and stable government. The public has such an interest in them that the husband and wife may not, at their pleasure, by collusion, or by deceit or fraud, break them up. Of course, there are cases where divorces may be proper and necessary, and for such the law has provided. But laxity in the granting of divorces leads to laxity in marriages, and·these together tend to dissolution and overthrow. That a grievous fraud was perpetrated upon appellant there can be no doubt. And no less a fraud was perpetrated upon the court. The law in force at the time this decree was rendered provided that divorces might be decreed by the circuit or common pleas courts of the State, on petition filed by any person who, at the time of the filing of such petition, was a *bona fide* resident of the county, etc., which *bona fide* residence should be proven to the satisfaction of the court trying the same. Appellant was not a resident of Kosciusko county, and if proof of such residence was made, as we must presume, it was by means of perjury. And so, too, the law required that, upon the filing of such petition, the clerk should issue a summons for the defendant, etc., which summons should be personally served on the defendant, if a resident of the State, either by reading or by leaving a copy thereof at his or her usual place of residence. Such a summons was issued. It is averred that it was not served personally by reading, nor was it served by copy in the sense required by the law, but, by fraud and connivance, a pretended service was made, with the design and purpose that appellant should have no notice of the outrage upon her and the court,which was being consummated in Kosciusko county. And thus, the court, by perjury and a false return, was cheated into assuming jurisdiction and rendering a decree which, in effect, rendered appellant a widow and her children orphans.

In the consummation of this wrong appellee doubtless deceived and misled his counsel also.

The courts of this State can not review judgments of divorce; this is prohibited by statute. In some of the earlier cases it seems to have been held that, in order to obtain relief from a judgment, the statute must be followed, and that the mode therein pointed out is exclusive of all others, and that as it is provided that judgments of divorce can not be reviewed, there is no remedy.

In the case of *McJunkin* v. *McJunkin,* 3 Ind. 30, an application was made to open up a decree of divorce for the purpose of defending upon the merits. It was held that the provisions of the statute in relation to opening decrees for a defence in certain cases, did not apply to decrees of divorce, and the application was denied upon an affidavit being filed by the petitioner in the divorce case, that since the decree he had remarried. This, it will be seen, was not an application to vacate the decree for fraud.

In the case of *Woolley* v. *Woolley,* 12 Ind. 663, an application was made under the section of the statute authorizing the court in certain cases to relieve parties within a year from judgments taken against them, through mistake, inadvertence, surprise, or excusable neglect. The court below set aside the judgment, so far as alimony was concerned, after the expiration of the year. The judgment seems to have been reversed for this reason. As to whether or not a decree might be vacated for fraud was not decided, but left in doubt.

In the case of *McQuigg* v. *McQuigg,* 13 Ind. 294, an application seems to have been made to vacate and set aside a judgment of divorce for fraud in obtaining it; what the fraud was does not appear in the opinion. From the brief of appellee's counsel we learn that the fraud charged was that at the time the decree of divorce was rendered, the petitioner was not a *bona fide* resident of this State, but of the State of New York, and made a temporary sojourn in Indiana for the sole purpose

of obtaining the divorce.   Three years had passed between the granting of the divorce and the application, and the petitioner, in the mean time, had remarried.   PERKINS, J., after holding that the decree could not be set aside under the provisions of the statute, added the following :   " In *Woolley* v. *Woolley*, 12 Ind. 663, a doubt was expressed whether the common-law right to set aside a judgment of a superior court by bill in chancery for fraud, or by a complaint in the nature of such a bill, had not been superseded entirely by the various provisions enacted into our code of practice, under which judgments may be vacated.   Further reflection has confirmed us in the opinion that such is the fact, and that the statutory modes must be resorted to.   This being the case, it follows that judgments of divorce can only be set aside upon a motion for a new trial, made within the time allowed therefor, and that the suit in the case now before us can not be maintained."

The case of *Hoffman* v. *Hoffman*, 15 Ind. 278, was decided upon the authority of the *McQuigg* case, without comment.

The case of *Quick* v. *Goodwin*, 19 Ind. 438, was an action against an executor, asking that a sale of lands by him be set aside on account of fraud.   The doctrine of the *Woolley* and *McQuigg* cases was applied to the case before the court, and upon the authority of those cases it was held that the remedy pointed out by the statute should be pursued in the form and manner therein indicated.   The court added :   " We suppose, under an application to review, etc., fraud in obtaining a judgment may be shown, as a cause, etc."

In the case of *Rindge* v. *Rindge*, 22 Ind. 31, a *quasi* consent was given to the doctrine of the *Woolley* and *McQuigg* cases.

In the case of *Gage* v. *Clark*, 22 Ind. 163, which was an action in the common pleas court to vacate a judgment rendered before a justice of the peace, and to obtain a temporary injunction, PERKINS, J., rendering the opinion, approved the doctrine of the *McQuigg* case, holding that the mode of vacating judgments pointed out by the statute must be followed,

and suggested that, possibly, that mode might be made applicable to justices' courts.

In the case of *Ewing* v. *Ewing*, 24 Ind. 468, the *Woolley* case, in 12 Ind., *supra*, was approved, and it was held that a new trial or rehearing could not be had in a divorce case under sections 99 and 356 of the code of 1852.

It may be said that the uniform ruling of this court has been that a judgment of divorce can not be reviewed under the section of the code authorizing such a proceeding in ordinary actions, and that new trials after the term at which decrees may have been rendered, can not be had in divorce cases under the section of the code authorizing such new trials in ordinary civil actions.

From the cases above examined, the former rulings seem to have been that no relief could be had from judgments in any case, except in the manner pointed out in the code, and that as no mode is provided by statute in divorce cases, no relief from such judgments could be had. Scattered through the reports, there are *quasi* recognitions of the rule that judgments may be vacated for fraud, independent of the mode provided in the code, and possibly there may be direct rulings to that effect, which we have overlooked in our present research.

The later, and, we think, better considered cases have departed very materially from some of the cases above examined. In the case of *Willman* v. *Willman*, 57 Ind. 501, the rule that judgments in divorce cases can not be reviewed under the code, is recognized, but it is limited to cases of valid and subsisting judgments, and a distinction is drawn between a proceding to review a judgment, and one to vacate and set it aside. It was accordingly held in that case that the decree, appearing to have been rendered without jurisdiction of the defendant, was void, and should be vacated and set aside. In the case of *Nealis* v. *Dicks*, 72 Ind. 374, it was held that the statute concerning the review of judgments does not restrict the power of the courts to set aside judg-

ments to the causes and modes therein specified, and to the exclusion of all other causes and modes, and that the courts have the power and the right to set aside and vacate judgments obtained by fraud. The distinction proper to be made in all cases is made in this between fraud in obtaining a judgment, and fraud constituting a defence to the action. The case of *Quick* v. *Goodwin*, 19 Ind. 438, *supra*, is noticed and disapproved, so far as it conflicts.

The case of *McQuigg* v. *McQuigg*, 13 Ind. 294, is not noticed, but the doctrine announced, we think, is in conflict with it, so far as it relates to the power of the courts to vacate and set aside judgments obtained by fraud. Equally as strong as the case cited from 72 Ind., *supra*, is the late and well considered case of *Cavanaugh* v. *Smith*, 84 Ind. 380.

These late cases, supported as they are by reason and a very full citation of authorities, establish the doctrine in this State that judgments obtained by fraud upon the court may be successfully assaulted for that reason, and that in such assault the grounds and mode pointed out in the statute are not exclusive. See also *Sanders* v. *State*, 85 Ind. 318 (44 Am. R. 29), and the authorities cited. That judgments thus obtained may be overthrown, vacated and set aside in a direct proceeding for that purpose, is well settled by the law-writers and the adjudicated cases. Bigelow Frauds, 175; *Edson* v. *Edson*, 108 Mass. 590 (11 Am. R. 393); *Allen* v. *Maclellan*, 12 Pa. St. 328; *Johnson* v. *Coleman*, 23 Wis. 452; *Singer* v. *Singer*, 41 Barb. 139; *Adams* v. *Adams*, 51 N. H. 388, 399 (12 Am. R. 134); *Boyd's Appeal*, 38 Pa. St. 241.

It will be noticed, that among the above citations are included a number of divorce cases. No distinction is made in the application of the rule between divorce cases and others, and there is no reason that there should be. Nor is there any reason for a distinction in this State. As we have seen, the statute makes a distinction, so far as relates to the review of judgments, and this distinction has been maintained in the granting of new trials after the term, etc. But where,

by deceit and fraud, a court is deceived into assuming jurisdiction and entering decrees dissolving the marital tie and obligation, every consideration of public policy and regard for innocent children require that the court, upon the discovery of such fraud, shall protect itself and the public therefrom.

We think, therefore, that when such a wrong has been consummated in the obtaining of decrees of divorce, the courts have the right and owe the duty to set them aside and declare them null and void, and that so far as the case of *McQuigg* v. *McQuigg, supra,* and the cases following it, conflict with the conclusion reached, they should be overruled. Very much good, we think, will come from the adoption of the rule in divorce cases, and no harm, provided the injured party is not negligent in moving, upon the discovery of the fraud. Possibly, in some cases, a second husband or wife may innocently be made to suffer, but, with proper restriction, this is not more likely than in the reversal of decrees on appeal to this court.

It is proper and right in the administration of the law to protect innocent third parties, who may marry a divorced man or woman, but it is quite as proper and important to protect the husband and wife and innocent children from fraudulent divorces. Some of the cases in this State, in which relief has been denied, are forcible illustrations of the necessity of the rule here adopted. The adoption of the rule is essential to the complete administration of justice, will tend to protect the courts and the family from fraud and wrong, and will serve as a warning to those inclined to practice such fraud.

This brings us to another branch of the controversy, which, in this case, will prevent the granting of the relief asked. It appears from the averments in the complaint that the decree of divorce was rendered in August, 1867. The bill in this case was not filed until July, 1882. Appellant thus allowed near fifteen years to pass without informing the court of the fraud, or making any effort to have the de-

cree set aside.   It is apparent that she has had knowledge of the decree, and of the fraud upon her and the court, during almost the entire time.   A second marriage has been contracted by appellee with another woman, whom we must presume to be innocent of any wrong, and two children have been born as the fruit of that marriage.   The record of the divorce proceedings shows, upon its face, a valid service of the summons upon appellant, and it is fair to presume that in all other respects the record is regular in form.   Upon its face it is not void, and it is possible that the second wife entered into the marriage relation with appellee, relying upon that record.

It will be observed, too, that it is not averred in the complaint in unqualified terms, that the party who made the pretended service of the summons had no authority to make a valid service.   It is said that he was not a regular deputy sheriff, and that the sheriff of Lake county had no power by deputation to clothe him with authority to serve the writ. These allegations are somewhat argumentative in form, and include in them an error of law.   The sheriff has authority to appoint a deputy to serve a particular writ.   *Proctor* v. *Walker*, 12 Ind. 660.

The allegations of the complaint do not exclude the idea that this was done by the sheriff of Lake county ; rather, the assumption is, that it was, but was void for want of authority on the part of the sheriff to make such an appointment.   Such being the case, the law is well settled, we think, that in order to have such decrees set aside for fraud in obtaining them, the complaining party must move without unreasonable delay, upon the discovery of the fraud, so that innocent parties may not be made to suffer.   No excuse is offered by appellant for the long delay except that she has been poor, and has waited until her son should attain his majority.   This we think is not sufficient.   For aught that appears, she was as well able from the first as now, to move in the matter, and we are not

informed in what manner the age of the son is of any material importance.

It is the general rule that parties seeking relief from fraud must move promptly upon the discovery of such fraud, and this rule may, with reason, be applied to a case like this.

In the case of *Moon* v. *Baum*, 58 Ind. 194, this court said:

"A party seeking to set aside a judgment for fraud in obtaining it, or an agreement for fraud in its execution, must proceed promptly upon the discovery of the fraud. An unexplained delay, without valid excuse, for more than five years, as in the present case, will defeat an action seeking a remedy against fraud."

In the case of *Singer* v. *Singer*, 41 Barb. 139, the court said:

"Independent of any other considerations, if the motion was properly made, and in due season, the court would order any judgment of divorce obtained by collusion or fraud to be set aside, not from any regard to the parties concerned, but from motives of public policy. In such a case, however, it should be made apparent, that the party so moving was acting from good motives, and not for any expected personal advantage. But where the judgment of divorce has been acquiesced in for a period of several years, and the plaintiff has again been married, some better reason than the mere gratification of personal feeling, or the desire to obtain a further sum of money from the plaintiff, should be made clearly to appear, before the court would be warranted in granting such an application. As I have already said, the ground on which such an order could be made would be one of public policy, but no such reason should suffice where, after the acquiescence of both the parties in the judgment for three years, an innocent person has become involved by marriage, and the opening of the judgment would involve her in distress, and perhaps disgrace. This reason alone would be sufficient to justify me in denying the motion, if there were no other reasons for doing so."

In *Nichols* v. *Nichols*, 25 N. J. Eq. 60, the Chancellor uses the following language, on page 65:

"Further, the complainant returned to New Jersey in July, 1868, immediately after the divorce was granted. The defendant, at about the same time, settled in Brooklyn. In 1870, he was married to the woman with whom, in the bill of complaint in this cause, the adultery is charged to have been committed, and that alleged adultery is the connubial intercourse between them. By her he has a child, the fruit of their marriage. The complainant filed her bill in July, 1872, four years after the decree of divorce was made, and over two years after her husband had contracted the second marriage. No reason or excuse is given or appears, for this delay in applying for relief against the proceedings of which she complains. * * Here is a longer delay, wholly unexplained. * * * Public policy does not require the intervention of this court between these parties. It rather forbids."

*Yorston* v. *Yorston*, 32 N. J. Eq. 495. In this case Chancellor RUNYON uses the following language, page 505:

"For seven years she" (complainant) "acquiesced in it and in the marriage which supervened upon it, and in those years three children have been born of that marriage, two of which are living. If the decree of divorce were set aside, the subsequent marriage would thus substantially be declared illegal, and the children thereof illegitimate. The complainant gives no good reason, and there appears to be none, for her long delay in seeking the aid of this court against the decree. * * * She must be adjudged to have acquiesced in the divorce and subequent marriage."

The same rule is recognized in the case of *Edson* v. *Edson*, 108 Mass. 590, already cited. *Smith* v. *Smith*, 3 Phila. 489; *Fidelity Ins. Co.'s Appeal*, 93 Pa. St. 242; 2 Bishop Marriage and Divorce, section 753b. The author says: "And the party defrauded must, if he would be heard, make his application with reasonable promptness after he has acquired knowledge of the fraud." *Zoellner* v. *Zoellner*, 46 Mich. 511.

In this case, the parties were residents of Detroit in the

State of Michigan. While the wife was temporarily absent at Toledo, in the State of Ohio, the husband procured a divorce from her on notice by publication alone. Soon after the rendition of the decree the husband notified her of the fact. The wife afterwards sought to have the decree set aside for fraud. The court says: " The defects in the proceedings which are now set up were open to detection by the least attention to facts which must have been obvious to her, and the notice from her husband, and the surrounding circumstances with which she was intimate, were urgent calls upon her to look into the proceedings. In short, if her present explanations are correct the facts of which she had full knowledge implied conclusively that the decree was a fraud, and there is no reason to suppose that she was not then as eligibly situated to take action as she is now. And although she continued in the same near neighborhood, she yet waited from the fall of 1872 until the 31st of March, 1881, an interval of between eight and nine years, and including in it the period of more than seven and a half years whilst complainant was living and the space of nearly a year subsequent to his death. And the case is bare of circumstances to palliate the delay. The proceeding is consequently subject to the proposition that the public peace and good order are concerned in withholding the assistance of equity from those who grossly neglect to take care of their own rights."

It follows, from what we have said, that, on account of appellant's laches, the court below did not err in sustaining the demurrer to the complaint, and that the judgment must be affirmed.

The judgment is affirmed at the costs of appellant.

Filed June 20, 1883.

### ON PETITION FOR A REHEARING.

ZOLLARS, J.—The elaborate argument of the learned counsel in support of the petition for a rehearing is based mainly, upon the assumption that the decree of divorce was and is

absolutely null and void, and that hence no amount of laches, nor length of acquiescence, can deprive appellant of the right to have the decree set aside and vacated. The assumption of this false premise is the vice in the argument which leads to a false conclusion. It is distinctly stated in the opinion that, so far as shown by the complaint in this case, the decree of divorce is not void.

The record in this case does not contain a copy of the decree and proceedings in the Kosciusko Circuit Court., The infirmities in those proceedings, so far as shown by the complaint, are not such as appear upon the face of the record. They are such as render the judgment voidable, but not void. As we said in the recent case of *Smith* v. *Hess, post,* p. 424, which was decided after a very full and careful examination: "Some confusion has been brought into the cases by the use of the terms void and voidable as applied to judgments. Judgments are frequently spoken of as void, because they may be so declared in a proper proceeding. The general and correct rule, as established by the weight of authority, is, that a judgment by a court of competent jurisdiction is not void, unless the thing lacking, or making it so, is apparent upon the face of the record. If the infirmity do not so appear, the judgment is not void, but voidable. One is a nullity, a mere *brutum fulmen,* and may be so treated by all persons, in collateral as well as direct attacks. The other, except in certain cases of fraud, is binding upon third parties, and upon the parties to it, as against a strictly collateral attack. Freeman Judg., section 116; *Allen* v. *Huntington,* 16 Am. Dec. 702; *Gall* v. *Fryberger,* 75 Ind. 98; *Bloomfield R. R. Co.* v. *Burress,* 82 Ind. 83; *Coan* v. *Clow,* 83 Ind. 417; *Cain* v. *Goda,* 84 Ind. 209; *Krug* v. *Davis,* 85 Ind. 309; *Pressler* v. *Turner,* 57 Ind. 56; *Evans* v. *Ashby,* 22 Ind. 15."

The Kosciusko Circuit Court is one of record and general jurisdiction, with full power to hear and render decrees in cases for divorce. It had jurisdiction of the subject-matter, and, so far as shown by the record, of the persons of the pe-

titioner and defendant. Except as pointed out in the complaint in this case, we must presume in favor of the regularity of the proceedings. The return of the summons in the divorce case, as shown by the complaint in this, was regular and valid. A person examining the record in that case would find nothing indicative of the wrongs and frauds complained of. The wrongs and frauds were upon the defendant and upon the court, which are not of record, and do not render the judgment void in a legal sense, but voidable. For the purposes of this case, it may be conceded that neither laches, nor lapse of time, will prevent a party from attacking and overthrowing a void judgment, and the proceedings based thereon, unless a limit as to time is fixed by positive statute. In such case, third parties have no right to rely upon the judgment or proceedings. For manifest reasons the same rule can not be applied to judgments that are regular upon their face, and voidable merely. Upon such, third parties have a right to rely; and hence upon the discovery of the fact that they have been procured by fraud upon the party, or upon the court, the injured party should move with reasonable promptness, and thus save third parties from injury. Such we understand to be the well settled doctrine of the books. We can not extend this opinion by giving the result of an examination of all of the cases cited by counsel. We take the time only to refer to the cases of *Pollard* v. *Wegener*, 13 Wis. 569; *Shaefer* v. *Gates*, 2 B. Mon. 453; *Lafayette Ins. Co.* v. *French*, 18 How. 404; *Pennoyer* v. *Neff*, 95 U. S. 714; and to say that in each of them the thing lacking to make a valid judgment is apparent upon the record. After a careful consideration of the arguments advanced, and a re-examination of the questions involved in the case, we are unable to reach a conclusion different from that stated in the opinion. The petition for a rehearing is therefore overruled.

Filed February 23, 1884.