**Jane M. ANDERSON, Appellant,**
**(Plaintiff below),**

**v.**

**Robert S. ANDERSON, Appellee,**
**(Defendant below).**

**No. 2–1175A341.**

Court of Appeals of Indiana,
Second District.

Dec. 31, 1979.

392

Ronald L. Sowers and M. Robert Benson, Torborg, Miller, Moss, Harris & Sowers, Fort Wayne, for appellant.

Leonard E. Eilbacher, Hunt, Suedhoff, Borror, Eilbacher & Lee, Fort Wayne, Robert G. Smith, Custer, Smith & Burry, Decatur, for appellee.

SHIELDS, Judge.

## CASE SUMMARY

Jane M. Anderson (Jane) appeals the judgment dismissing her amended complaint.

1. The agreement concerned only the marital property since there were no minor children.

2. Jane filed her complaint in the Adams Circuit Court and, upon her motion, the cause was venued to the Wells Circuit Court on March 5, 1975.

3. IC 1971, 34–1–60–9 (Burns Code Ed.), provides:

 Deceit or collusion of attorney—Damages —Penalty.—An attorney who is guilty of de-

## ISSUES

Jane has presented several issues which we have consolidated into the following:

(1) Did the trial court err in determining Jane's amended complaint failed to state a claim for relief?, and

(2) Did the trial court err by the procedures it employed to dismiss Jane's amended complaint?

We affirm.

## FACTS

Robert S. Anderson (Robert), an attorney, filed a petition for the dissolution of the parties' thirty-year marriage on December 26, 1973. Thereafter Robert and Jane negotiated a property settlement agreement which they executed on March 12, 1974.[1] A dissolution decree was entered by the Adams Circuit Court on March 15, 1974. The decree contained neither an order dividing the parties' property nor any indication the agreement was submitted to the Court. No appeal was taken from this judgment.

On December 26, 1974 Jane commenced a new and distinct cause of action by filing a three-count complaint.[2] The first count, based upon the theories of fraud and attorney deceit,[3] alleged Jane and Robert were formerly married; Robert filed a petition for dissolution of their marriage; their marriage was dissolved by decree of the Adams Circuit Court; between December 26, 1973 and March 12, 1974 she entered into negotiations with Robert for division of the parties' property; at the outset of said negotiations Robert told her that it would be a waste of time and money for her to obtain independent counsel to represent her

ceit or collusion, or consents thereto, with intent to deceive a court or judge, or a party to an action or judicial proceeding, is punishable for a misdemeanor, and shall also forfeit to the party injured, treble damages, recoverable in a civil action. [Acts 1881 (Spec. Sess.), ch. § 841, p. 240.]

This provision was amended by Acts 1978, P.L. 2, § 3402, p. 587, to make a violation thereof a Class B misdemeanor.

during the negotiations; because of his knowledge and experience as a practicing attorney and the trust she placed in him as her husband, she relied on his advice and did not obtain independent counsel to represent her during the negotiations; Robert presented a hand-written list of the assets she was to receive and the estimated value of those assets; he represented the value of the listed assets at $184,414.35 when, in fact, their worth was only $153,380.83; Robert knew, or using reasonable care should have known, the true value of the listed assets; at the conclusion of the negotiations, on March 12, 1974, Robert presented the property settlement agreement for her signature, telling her it was a fair and equitable settlement in terms of the law; and, in reliance upon Robert's knowledge and special skills as an attorney and the trust she placed in him as her husband, she signed the agreement.

The first count further alleged Robert's representations in regard to the agreement were false and fraudulent in the following particulars: the agreement is not a fair and equitable division of the property in accordance with the guidelines set out in the Indiana Dissolution of Marriage Act; the bulk of what she received under the agreement was property or dividends and interest or appreciation on property she received through inheritance from her mother's estate; the agreement only awards her 30% of the marital property; the agreement did not take into account the earnings or earning abilities of the parties; the agreement did not take into account her contributions to the marriage as a homemaker; and the agreement did not convey the value Robert represented. The first count prayed for actual damages of $110,000 and treble damages of $330,000.

The second count of Jane's complaint incorporated by reference the first count and alleged the acts, omissions, and misrepresentations of Robert were done intentionally or with heedless disregard for her rights. The second count prayed for punitive damages of $100,000.

The third count, based upon a theory of legal malpractice, alleged between December 26, 1973 and March 15, 1974 Robert, a licensed attorney, undertook to advise her concerning her rights and remedies relative to a pending dissolution of marriage action; she relied upon Robert's knowledge and experience and the fiduciary relationship existing between them; Robert, in rendering said services, failed to exercise the degree of skill and care expected of an attorney; as a proximate result of Robert's negligence, she received far less by way of the property division than she would have received had she been adequately represented. The third count prayed for damages of $110,000. Jane attached to her complaint a copy of the hand-written list of assets she was to receive and a copy of the property settlement agreement.

In his answer, Robert requested Jane's complaint be dismissed because it "fails to state a claim upon which relief can be granted." Later Robert requested a judgment on the pleadings,"with respect to the defense raised by . . . [his] Answer." Admitting for the purposes of the motion the facts alleged in Jane's complaint, Robert argued in his supporting brief that these facts prevented Jane from any recovery under Indiana law. Because the dissolution decree referred to in her complaint was a final and complete adjudication of the parties' property rights, he argued her complaint was an impermissible collateral attack. After hearing the parties' arguments on the motion, the trial court entered a judgment dismissing Jane's complaint.[4] The trial court found the dissolution decree to be a final and complete adjudication of the parties' property rights, thereby barring Jane's action as an impermissible collateral attack.[5]

---

4. *See,* Ind. Rules of Procedure, Trial Rule 12(D) allowing for pretrial determination of TR 12(C) motions for judgment on the pleadings and TR 12(B) defenses "upon application of any party or by order of court."

5. The judgment, omitting caption and formal parts, provided:

On June 24, 1975 Jane filed an amended complaint.[6] Although reasserting the basic facts and requests for relief as her original complaint, Jane's amended complaint did not pray for punitive damages. Additionally, Jane alleged in the dissolution proceeding the trial court had not determined the property rights of the parties because Robert's petition for dissolution "did not present to the jurisdiction of the Adams Circuit Court the matter of property or property rights of the [parties]" and the dissolution decree "excepted any reference to property or property rights of [the parties] . . . ." In addition to the two exhibits attached to the original complaint,[7] Jane attached copies of the dissolution decree and Robert's petition for dissolution.

Robert responded with a "Motion to Strike Amended Complaint," accompanied by a supporting brief presenting two legal arguments: first, the amended complaint was an improper pleading following an entry of judgment; and, second, admitting the dissolution decree did not address the issue of the parties' property, he argued the power of the trial court in a dissolution action to adjust and determine the property rights is mandatory; therefore, a dissolution decree, even though silent on the issue of property rights, may not be collaterally attacked. In response to Robert's motion, Jane argued she had an absolute right to amend her complaint within ten days from the time she was served with notice of the judgment of dismissal. On September 8, 1975 the trial court granted Robert's motion to strike the amended complaint "for the reasons set forth in said motion."[8]

Jane's motion to correct errors challenging the June 17 judgment dismissing her original complaint was overruled by the trial court on September 8, 1975. Jane challenged the order striking her amended complaint with a second motion to correct errors. The trial court overruled her second motion to correct errors on September 23, 1975.

I

## CHALLENGED SUBSTANTIVE ERROR IN DISMISSING AMENDED COMPLAINT: EFFECT OF DISSOLUTION DECREE

The trial court held the dissolution decree operated as an absolute bar to the maintenance of Jane's asserted claims under the

---

Defendant's Motion for Judgment on the Pleadings pursuant to Paragraph VIII of Defendant's Answer and Defendant's Motion filed on May 23, 1975, having been taken under advisement and the Court being now sufficiently advised now grants said Motion.

Plaintiff's Complaint fails to state a claim upon which relief can be granted in that it makes no claim recognizable under Indiana law.

Trial Rule 60(B), sub-section (3) and (8), I.C. 31–1–11.5–9 and –11; *Alderson v. Alderson*, 258 Ind. 328, 281 N.E.2d 82.

It was clearly established under the divorce law of the State of Indiana that collateral attack such as that made by plaintiff's complaint was not recognized and must be dismissed. The finality of a decree of divorce with respect to property rights was acknowledged. *Muckenburg v. Holler* (1867) 29 Ind. 139, 92 Am.Dec. 345; *Walker v. Walker* (1898) 150 Ind. 317, 50 N.E. 68; *Wagner v. Treesh* (1919) 71 Ind.App. 551, 125 N.E. 242; *Shultz v. Shultz* (1894) 136 Ind. 323, 36 N.E. 126; *Novak v. Novak* (1956) 126 Ind.App. 428, 133 N.E.2d 578.

These precedents clearly apply in the same manner to the current Dissolution of Marriage statute now in effect in this State.

WHEREFORE, IT IS ORDERED, ADJUDGED AND DECREED That this cause is dismissed. Judgment against plaintiff for costs.

6. The amended complaint filed in the Wells Circuit Court alleged that the filing thereof was pursuant to Ind. Rules of Procedure, Trial Rules 12(B) and 15(A) allowing for amendment of a pleading as a matter of right.

7. As indicated earlier, the exhibits attached to the original complaint were a copy of the parties' property settlement agreement and a copy of the list of assets she was to receive pursuant to that agreement.

8. Because Robert's motion to strike Jane's amended complaint attacked the amended complaint's legal sufficiency, the trial court's order granting his motion amounted to a dismissal of her amended complaint for failure to state a claim. *See* discussion at Part II of this opinion.

doctrine of *res judicata*.[9A] Challenging the substantive basis of the trial court's action, Jane presents the following arguments:

(A) An action for damages on the grounds of fraud is not an impermissible collateral attack upon the dissolution decree;

(B) The dissolution decree does not bar an independent action for fraud in the procurement of a judgment pursuant to Indiana Rules of Procedure, Trial Rule 60(B);

(C) The dissolution decree does not bar either a negligence action for legal malpractice or an action for attorney deceit pursuant to IC 34–1–60–9.

## A

### *Action for Fraud*

Jane argues when one is induced to enter a contract by the fraud of the other contracting party common law allows the injured party to keep what has been derived under the contract and recover in an action for fraud the damages caused by the fraud. She contends, because the dissolution decree does not adjudicate the parties' property rights, *res judicata* does not bar her from maintaining an action for fraud based upon her agreement with Robert. This claim is proper, she argues, because it is not based upon the dissolution decree but upon the settlement agreement as a contract. We disagree.

■ When the Dissolution of Marriage Act addresses a situation the traditional rules of contract and tort must yield to the provisions of that Act, §§ 31–1–11.5–1 to 31–1–11.5–24 (Burns Code Ed., 1978 Supp.),[9] and the law related thereto.

Under the law existing prior to the Dissolution of Marriage Act, a divorce decree operated as an absolute bar to maintaining an independent action involving property rights growing out of or connected with the marriage,[10] regardless of whether the divorce decree adjudicated the parties' property rights.[11] This was true even though

**9A.** We note there are two branches of what has been loosely referred to as "*res judicata*." The first is generally referred to as claim preclusion or estoppel by judgment; the second, often called "*collateral estoppel*," is generally referred to as issue preclusion or estoppel by verdict or finding. *See Town of Flora v. Indiana Service Corp.*, (1944) 222 Ind. 253, 53 N.E.2d 161. *See also Blake v. Blake*, (1979) Ind.App., 391 N.E.2d 848; *In re Estate of Nye*, (1973) 157 Ind.App. 236, 299 N.E.2d 854. As used herein to discuss Jane's preclusion from asserting her purported claims, we are loosely using *res judicata* to refer to *collateral estoppel*, or issue preclusion.

**9.** This Act became effective September 1, 1973.

**10.** *Novak v. Novak*, (1956) 126 Ind.App. 428, 133 N.E.2d 578; *Arnold v. Arnold*, (1933) 95 Ind.App. 553, 183 N.E. 910; *Smith v. Smith*, (1905) 35 Ind.App. 610, 74 N.E. 1008. *See also Walker v. Walker*, (1898) 150 Ind. 317, 50 N.E. 68, stating at 150 Ind. at 325, 50 N.E. at 70:

By a long line of decisions, beginning with the case of *Fischli v. Fischli*, 1 Blackf. 360, the doctrine has been generally affirmed and settled in this jurisdiction that a decree of divorce by a court having jurisdiction of the subject-matter and the parties is deemed and held to be an adjudication between the divorced parties of all property rights or questions growing out of or connected with the marriage. As a general rule, all such ques-

tions, unless excepted therefrom, are considered as put to rest by the judgment, and the parties thereto are precluded thereby until it is set aside in a proper proceeding. *Muckenburg v. Holler*, 29 Ind. 139 [, 92 Am. Dec. 345]; *Rose v. Rose*, 93 Ind. 179; *Behrley v. Behrley*, 93 Ind. 255; *Hills v. Hills*, 94 Ind. 436; *Stultz v. Stultz*, 107 Ind. 400, 8 N.E. 238; *Nicholson v. Nicholson*, 113 Ind. 131, 15 N.E. 223; *Thompson v. Thompson*, 132 Ind. 288, 31 N.E. 529; *State [ex rel.] v. Parrish*, 1 Ind.App. 441, 27 N.E. 652.

**11.** While it appears as though in most jurisdictions a divorce decree that does not contain an adjudication of the parties' property rights does not bar an independent action involving such rights, *See* Annot. 32 A.L.R.2d 1135 (1953); *see also* 27B C.J.S. Divorce § 301(2) (1959); the rule in Indiana is to the contrary. *Walker v. Walker, supra.* In Indiana the divorce decree is conclusive as to all matters that were *or could have been* litigated. *Behrley v. Behrley*, (1884) 93 Ind. 255; *Wise v. Wise*, (1918) 67 Ind.App. 647, 119 N.E. 501. As stated in *Wagner v. Treesh*, (1919) 71 Ind.App. 551 at 554, 125 N.E. 242 at 242–243:

A decree of divorce by a court having jurisdiction of the subject-matter and the parties is an adjudication of all property rights or questions growing out of, or connected with, the marriage. As a general rule, all such questions, unless excepted therefrom, are put

the independent action was based upon a "contract" entered into between the parties.[12] In so holding, the courts reasoned that in a divorce proceeding it was the *mandatory duty* of the trial court to adjust and determine the parties' property rights. *Smith v. Smith,* (1953) 124 Ind.App. 343, 115 N.E.2d 217; *Wise v. Wise, supra.* As stated in *Nagel v. Nagel,* (1960) 130 Ind.App. 465, at 470, 165 N.E.2d 628, at 631:

> In a divorce action all property rights connected with the marriage are to be settled. The court not only has the power to so act, but the exercise of that power is mandatory (citations omitted).

We believe the current Dissolution of Marriage Act has preserved the prior law in this regard. The provisions of the Dissolution of Marriage Act evidence a legislative intent to vest the trial court in a dissolution proceeding with *exclusive* jurisdiction over all aspects of the marital relationship, including questions of *property rights* and child custody. For example, IC 31–1–11.5–11, addressing disposition of property in a dissolution proceeding, provides "the court *shall* divide the property of the parties . . . ." [Burns Code Ed. 1978 Supp.] (emphasis added). The use of the "shall" evidences an intent to preserve the prior law requiring the trial court in a dissolution proceeding to adjust and determine the par-

ties' property rights. The trial court may exercise its duty by approving an agreement or dividing the property itself when it disapproves an agreement or when there is no agreement. *Waitt v. Waitt,* (1977) Ind. App., 360 N.E.2d 268.

While the current dissolution law encourages a negotiated agreement by the parties, IC 31–1–11.5–1, *supra; Covalt v. Covalt,* (1976) Ind.App., 354 N.E.2d 766; *Flora v. Flora,* (1975) 166 Ind.App. 620, 337 N.E.2d 846,[13] the court in a dissolution proceeding has the discretion to accept, modify, or reject such an agreement. IC 31–1–11.-5–10, *supra; Waitt v. Waitt, supra; Flora v. Flora, supra.* The settlement agreement in itself is not a legal instrument binding on the parties, no matter how formally executed, until it is approved by the court and incorporated and merged into the decree. *See Grace v. Quigg,* (1971) 150 Ind.App. 371, at 379, 276 N.E.2d 594, at 599. Hence, a settlement agreement that has not been approved by the dissolution court and incorporated and merged into the decree has no legal efficacy. The Dissolution of Marriage Act provides the sole method for dividing the marital property in a dissolution proceeding,—by the court's order or decree.

Jane's suit for fraud, therefore, cannot be grounded on the settlement agree-

---

at rest by the judgment, and the parties thereto are precluded thereby until it is set aside in a proper proceeding. Such a decree precludes the parties as to all matters which might have been legitimately proved in support of the charges or the defenses in the action.

12. *Cf. Walker v. Walker, supra* (divorce decree barred former husband's guardian from maintaining an action to set aside an antenuptial contract); *Behrley v. Behrley, supra* (divorce decree barred former wife's suit seeking recovery based upon an antenuptial contract); *Muckenburg v. Holler,* (1867) 29 Ind. 139, 92 Am.Dec. 345 (divorce decree barred former husband's suit seeking enforcement of parties' post-nuptial contract).

13. The section pertaining to such agreements, IC 31–1–11.5–10, provides:

Agreements.—(a) To promote the amicable settlements of disputes that have arisen or may arise between the parties to a marriage attendant upon the dissolution of their

marriage, the parties may agree in writing to provisions for the maintenance of either of them, the disposition of any property owned by either or both of them and the custody and support of their children.

(b) In an action for dissolution of the marriage the terms of *the agreement if approved by the court shall be incorporated and merged into the decree* and the parties ordered to perform them, or the court may make provisions for disposition of property, child support, maintenance, and custody as provided in this chapter [31–1–11.5–1—31–1–11.5–24] [emphasis added].

(c) The disposition of property settled by such an agreement and incorporated and merged into the decree shall not be subject to subsequent modification *by the court except as the agreement itself may prescribe or the parties may subsequently consent.* [IC 1971, 31–1–11.5–10, as added by Acts 1973, P.L. 297, § 1, p. 1585; 1974, P.L. 132 § 7, p. 558.] [emphasis added].

ment, *i. e.*, the contract. It must be grounded on the dissolution decree. It has long been the law in Indiana that a litigant defeated in a tribunal of competent jurisdiction may not maintain an action for damages against his adversary or adverse witnesses on the ground the judgment was obtained by false and fraudulent practices or by false and forced evidence. *Herman v. Jobes*, (1935) 209 Ind. 196, 198 N.E. 316; *Shultz v. Shultz*, (1894) 136 Ind. 323, 36 N.E. 126; *Nicholson v. Nicholson*, (1888) 113 Ind. 131, 15 N.E. 223; *Novak v. Novak*, (1956) 126 Ind.App. 428, 133 N.E.2d 578.

In *Nicholson v. Nicholson, supra*, the former wife brought suit for "damages on account of fraud alleged to have been practiced by [her former husband] in obtaining the entry of a decree of divorce from [her]." In reversing the trial court's ruling that the complaint stated a good cause of action, our Supreme Court stated:

. . . In short, the case comes to this: The appellee proposes to show in this collateral proceeding that the judgment of divorce ought never to have been rendered, or, if rendered, that provision ought to have been made therein for her support; and that, because the appellant wrongfully obtained a judgment of divorce by the methods disclosed in the complaint, without making provision for her support, she is entitled to maintain an action for damages. All this, however, wholly ignores and sets at naught the well-settled and often reiterated rule that a judgment rendered by a court having complete jurisdiction must be regarded by the parties thereto as speaking the exact truth in respect to all matters which were involved in the issue in that proceeding, so long as the judgment remains in force. However a judgment may have been obtained, unless it is void it cannot be ignored, and the rights of the parties again inquired into in a collateral proceeding. This was determined in the recent case of *Weiss v. Guerineau*, 109 Ind. 438, 9 N.E. Rep. 399, and the cases there cited. The rule applicable in this connection is well stated in the following language: "The settled policy of the law

forbidding that a matter once adjudicated shall be again drawn in issue while the former adjudication remains in force, does not permit the prosecution of an action for obtaining judgment by false and fraudulent practices, or by false and forced evidence. Neither can a party against whom judgment has been recovered sustain an action against his adversary and the witnesses for damages occasioned by their conspiring together and procuring a judgment by fraud, as long as the judgment remains in force unreversed, because the charges made in the second action are conclusively negatived by the former adjudication." Freem. Judgm. § 289.

The first judgment remaining in force, operates as an estoppel against the plaintiff, and prevents her from proving the charges contained in the complaint for damages. *Dunlap v. Glidden*, 31 Me. 435; *Field v. Sanderson*, 34 Mo. 542; *Hillsborough v. Nichols*, 46 N.H. 379; *Mason v. Messenger*, 17 Iowa 261. It follows that so long as the judgment in question here remains in force it concludes the plaintiff upon all questions relating to whether or not the appellant had sufficient cause to obtain a divorce at the time the decree was pronounced, and it is equally conclusive upon all questions pertaining to the property rights of the parties, or in relation to the appellee's right to a provision in the nature of alimony. *Rose v. Rose*, 93 Ind. 179; *Behrley v. Behrley*, Id. 255. These questions having been conclusively settled by the judgment in the divorce proceeding, they cannot be opened up by alleging fraud in obtaining the judgment. The plaintiff cannot thus again draw in question the very issues which were determined by the former judgment. The judgment being valid so far as questions of jurisdiction are concerned, the allegation that it was obtained by fraud is unavailing to disturb its conclusive effect. Bigelow, Estop. 150. While that judgment stands, its conclusive effect cannot be collaterally questioned; nor can any question be raised concerning the method

by which the judgment was obtained, except in a direct proceeding to set it aside. 113 Ind. at 137, 138, 15 N.E. at 226.

In this case there is no question the dissolution court had jurisdiction. Thus the court had the power and, indeed, the duty to decide *questions pertaining to the marital property.* Hence, so long as the dissolution decree stands, Jane may not question the method by which the decree was obtained, *except in a direct proceeding.*[14]

### B

### *T.R. 60(B) Claim Fraud in Procurement of Judgment*

Jane contends, notwithstanding her other claims, her complaint stated facts sufficient to state a claim for an independent action for fraud in the procurement of a judgment pursuant to T.R. 60(B).[15] She further contends this action is a direct attack upon the dissolution decree, rendering the rule of former adjudication inapplicable.

An attack upon a judgment for fraud in its procurement[16] has long been recognized in Indiana as a direct attack to which the rule of former adjudication does not apply. *Ayres v. Smith,* (1948) 227 Ind. 82, 84 N.E.2d 185; *Cottrell, Admr. v. Koon,* (1898) 151 Ind. 182, 51 N.E. 235. *See also Earle v. Earle,* (1883) 91 Ind. 27 (first decision to vacate and set aside a divorce decree specifically approving an independent action for fraud in the procurement). Moreover, the final paragraph of T.R. 60(B) preserves the power of a court to entertain an independent action for fraud in the procurement of a judgment.[17] We do not agree with Jane, however, that her complaint alleged facts sufficient to state such a claim.

The independent action to avoid a judgment because of fraud in the procurement is an equitable proceeding and, as such, is subject to the rules of equitable discretion. *See generally,* 4 *W. Harvey &*

14. When a separation agreement has been incorporated and merged into the decree, the Dissolution of Marriage Act provides for a *direct* attack upon the agreement upon the grounds of fraud. *See* IC 31–1–11.5–17(a), providing . . .

 Modification and termination of maintenance, support and property dispositions.— (a) * * * *The orders as to property disposition entered pursuant to section 9 [31–1–11.5–9] may not be revoked or modified, except in case of fraud which ground shall be asserted within two [2] years of said order.* (emphasis added.)

 Pursuant to the aforementioned section, a property settlement agreement *that has been incorporated and merged into the decree* may be revoked or modified upon the grounds of fraud asserted within two (2) years of the entry of the dissolution decree. *Pactor v. Pactor,* Ind.App., 391 N.E.2d 1148. Since, however, in the case at bar, the property settlement agreement was not incorporated and merged into the dissolution decree, Jane may not avail herself of the aforementioned provision. In this regard her appropriate remedy is discussed in IB of this opinion.

15. The final paragraph of T.R. 60(B), upon which Jane relies, provides:

 The motion shall be made within a reasonable time, and for reasons (1), (2), (3) and (4) not more than one [1] year after the judgment, order or proceeding was entered or taken. A motion under this subdivision (B) does not affect the finality of a judgment or

suspend its operation. *This rule does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order or proceeding or for fraud upon the court.* Writs of coram nobis, coram vobist, audita querela, and bills of review and bills in the nature of a bill of review, are abolished, and the *procedure for obtaining any relief from a judgment shall be by motion as prescribed in these rules or by an independent action.* (emphasis added.)

16. *See Chermak v. Chermak,* (1949) 227 Ind. 625, 88 N.E.2d 250, for the distinction between fraud in the procurement, sometimes referred to as extrinsic fraud, and fraud in the inducement, sometimes referred to as intrinsic fraud. In this regard, it should be noted that, unlike the independent action pursuant to the final paragraph of T.R. 60(B), the relief from judgment for fraud pursuant to Indiana Rules of Procedure, Trial Rule 60(B)(3) may be predicated upon either extrinsic or intrinsic fraud. *See* 4 *W. Harvey & R. Townsend, Indiana Practice* § 60.12, at 211 (1971).

17. *Cf., Caley v. Lung,* (1971) 257 Ind. 116, 271 N.E.2d 891 (independent action to set aside an adoption due to fraud in the procurement may be maintained pursuant to T.R. 60[B]). *See also* Civil Code Study Commission Comments, 4 *W. Harvey & R. Townsend, Indiana Practice* at 199 (1971); 4 *W. Harvey & R. Townsend, Indiana Practice* § 60.18 at 216 to 218.

*R. Townsend, Indiana Practice* § 60.18. One established principle of equity is one may not obtain equitable relief against a judgment when other adequate remedies are available. *Livingston v. Livingston*, (1921) 190 Ind. 223, 130 N.E. 122; *Ross v. Banta*, (1885) 140 Ind. 120, 34 N.E. 865. Jane has not exhausted her other remedies.

▆ We have previously held that dissolution of the marriage and division of property may be accomplished through two separate orders issued on two separate dates. *Lewis v. Lewis*, (1977) Ind.App., 360 N.E.2d 855. Here, the trial court has failed to render a decision on an issue statutorily presented to it by any petition for the dissolution of the parties' marriage—the division of marital property. Thus, the decree is in the nature of a judgment upon less than all of the issues and the dissolution court retains exclusive jurisdiction over the issue of the parties' property rights. *See also* Indiana Rules of Procedure, Trial Rule 54(B). Jane's remedy, therefore, is to secure the court's disposition of this remaining issue. In that proceeding the question of Robert's concealment or misrepresentation of the marital property will properly be in issue and the appropriate relief obtained.

## C

### Action for Legal Malpractice and Attorney Deceit

We agree with Jane that the dissolution decree does not bar either her negligence action for legal malpractice nor her action for attorney deceit pursuant to IC 34–1–60–9. We do not agree, however, that she has alleged facts in her complaint sufficient to state either cause of action.

▆ The dissolution decree does not bar Jane's actions for legal malpractice and attorney deceit because judgments are presumptively only conclusive against parties in the character in which they sue or are sued. *Burrell v. Jean*, (1925) 196 Ind. 187, 146 N.E. 754; *American National Bank &*

*Trust Co. v. Hines*, (1968) 143 Ind.App. 217, 239 N.E.2d 589. In the dissolution action, Robert brought suit in his personal capacity as a spouse, *i. e.*, as a party litigant; in her claims for legal malpractice and attorney deceit Robert is being sued as an attorney. The dissolution decree obtained by Robert in his capacity as a party litigant is not a bar to the present actions against Robert as an attorney.

▆ While the dissolution decree does not bar Jane's purported claims for legal malpractice and attorney deceit, we hold these actions are premature because the amended complaint reveals Jane has not at this time suffered damage.

### 1.

### Legal Malpractice

▆ The law is well settled in Indiana that an attorney may be held liable to his client for damages resulting from his failure to exercise ordinary care, skill, and diligence. *See Reilly v. Cavanaugh*, (1868) 29 Ind. 435; *Nave v. Baird*, (1859) 12 Ind. 318; *Rooker v. Bruce*, (1909) 45 Ind.App. 57, 90 N.E. 86. A cause of action for legal malpractice, however, does not accrue until the aggrieved party has suffered both an injury to his property and damages.[18] *Shideler v. Dwyer*, (1979) Ind.App., 386 N.E.2d 1211.

In her claim for legal malpractice, Jane alleges Robert induced her not to retain an attorney for the negotiations concerning the property settlement agreement, and he acted as her attorney during *said negotiations*; in rendering services Robert "failed to exercise the degree of skill and care expected and required of an attorney" and "[t]hat as a proximate result of the carelessness and negligence of [Robert], [Jane] received far less by way of division of the property than she would have received had she been adequately represented by counsel." Her claim amounts to this: she had a claim for marital property in the dissolution

---

18. In this regard, the courts of other jurisdictions have reached divergent views as to the necessity of the occurrence of damages to the accrual of a cause of action for legal malpractice. *See* Anno. 18 A.L.R.3d 978 (1968).

action and as a result of Robert's negligence she lost the claim (or a portion thereof).

The measure of damages recoverable in such cases is generally the value of the claim lost. *See Moorman v. Wood*, (1889) 117 Ind. 144, 19 N.E. 739; *see generally*, Anno. 45 A.L.R.2d 62 (1956); 7 Am.Jur.2d *Attorney at Law* § 190 (1963); 7 C.J.S. Attorney and Client § 157(F) (1937). However, the dissolution decree did not dispose of the parties' property and, therefore, the damages or loss alleged by Jane are, at this time, nonexistent. The dissolution court may ultimately enter a property disposition more favorable than Jane thought she received; in which case she may not sustain the damages she now claims.[19]

The Louisiana Court of Appeals addressed a similar situation involving a malpractice suit by an individual against several attorneys who had represented her in several contractual disputes. *Marchand v. Miazza*, (1963) La.App., 151 So.2d 372. Plaintiff claimed the failure of the attorneys to properly represent her caused her to lose certain property rights. The attorney-defendants met the suit with a plea of prematurity. Because plaintiff had four suits pending in which she was still attempting to enforce the contractual rights allegedly lost, it was possible the court in the pending suits would decide these contractual rights had not been lost. Thus defendant-attorneys argued the alleged malpractice would have caused plaintiff no damage.

The Louisiana Court of Appeals initially held the statute of limitations for legal malpractice commences to run where, in point of time, the damage follows the wrongful act. Plaintiff's suit was, therefore, premature.

> [U]ntil it has been established that the defendants wrongfully permitted a loss to plaintiff, no damage can be shown. 151 So.2d 372, at 375.

*See also Capital Bank & Trust Co. v. Core*, (1977) La.App., 1st Cir., 343 So.2d 284.

We find Jane's cause of action for legal malpractice cannot arise until it has been established that Robert wrongfully permitted the loss alleged. This cannot be known until a property disposition is entered by the dissolution court.

### 2.

### *Attorney Deceit*

■ We further find Jane's claim for attorney deceit, pursuant to IC 34–1–60–9, suffers a similar fate as her claim for legal malpractice. The complaint does not reveal Jane has at this time suffered the damages she alleges.

Although the statute concerning attorney deceit, IC 34–1–60–9, has been in existence since 1881,[20] there have been few cases litigated under this statute and the cases citing the statute provide us with little assistance.[21] Other jurisdictions with similar statutes[22] have held, however, the statute

---

19. This is not to say Jane has not suffered consequential or special damages as a result of Robert's alleged negligence. To be recoverable, however, such special damages must be specifically pled. Indiana Rules of Procedure, Trial Rule 9(G); *Dubreuil v. Pinnick*, (1978) Ind.App., 383 N.E.2d 420, 427. Jane has not pled any special damages.

20. The text of this statute is found in footnote 3 at page 394 of this opinion.

21. Our research reveals only two Indiana decisions and one federal court of appeals decision citing IC 34–1–60–9. *See Trigg v. Crim. Ct. of Marion Cty.*, (1955) 234 Ind. 609, 130 N.E.2d 461; *Whitesell v. Study*, (1905) 37 Ind.App. 429, 76 N.E. 1010; *Barelli v. Levin*, (7th Cir. 1973) 480 F.2d 1207.

22. *See e. g.*, Minn.Stat.Ann. §§ 481.07 and 481.-071 providing:

481.07 Penalties for deceit or collusion

An attorney who, with intent to deceive a court or a party to an action or judicial proceeding, is guilty of or consents to any deceit or collusion, shall be guilty of a misdemeanor; and, in addition to the punishment prescribed therefor, he shall be liable to the party injured in treble damages. If he permit any person not his general law partner to begin, prosecute, or defend an action or proceeding in his name, the attorney giving such permission, and every person so using his name, shall forfeit $50 to the party against whom the action or proceeding is prosecuted or defended, recoverable in a civil action.

481.071 Misconduct by attorneys

does not create a new cause of action. *See Smith v. Chaffee,* (1930) 181 Minn. 322, 232 N.W. 515; *Graham v. Strom,* (Sup.1962) 234 N.Y.S.2d 886. *See also,* 7 Am.Jur.2d *Attorney and Client* § 155, p. 995. In *Smith v. Chaffee, supra,* the Minnesota Supreme Court stated at 232 N.W. 515, at 517:

> An attorney guilty of deceit or collusion, with intent to deceive any party to a lawsuit, or guilty of delaying his client's cause for his own gain or benefit, has always, so far as we know, been liable in damages to the party injured thereby. The section does treble the damages to be recovered in such an action, but does not create a new cause of action.

 In line with the foregoing authorities, we hold IC 34–1–60–1 does not create a new cause of action but, instead, trebles the damages recoverable in an action for deceit. The essential elements required to sustain an action for deceit are:

> [T]hat a representation was made as a statement of fact, which was untrue and known to be untrue by the party making it, or else recklessly made; that it was made with intent to deceive and for the purpose of inducing the other party to act upon it; and that he did in fact rely on it

and was induced thereby to act to his injury or damage. *Automobile Underwriters, Inc. v. Rich,* (1944) 222 Ind. 384, at 391, 53 N.E.2d 775, at 777–778.[23]

*See also, Jagers v. Jagers,* (1875) 49 Ind. 428. Plaintiff must show a defendant-attorney accused of such deceit practiced such deceit in his capacity as an attorney and not in his individual capacity as a citizen or party-litigant.

 In an action for deceit, however, as in the case with legal malpractice actions, damage to the plaintiff as a result of the fraudulent representations is a necessary prerequisite to recovery. *See Strader v. Strader,* (1898) 151 Ind. 339, 51 N.E. 479; *See generally,* W. Prosser, Law of Torts 731 (1971). The measure of damages in such cases is the difference between the value of what he has parted with and the value of what he has received. *Rochester Bridge Co. v. McNeill,* (1919) 188 Ind. 432, 122 N.E. 662; *but see Nysewander v. Lowman,* (1890) 124 Ind. 584, 24 N.E. 355, [holding that the measure of damages for deceit is the difference between the actual value of what he has received and the value that it would have been had the facts been as represented].

*See also,* Iowa Code Ann. § 610.15, providing:

> 610.15 Deceit or collusion
> An attorney and counsel who is guilty of deceit or collusion, or consents thereto, with intent to deceive a court or judge or a party to an action or proceeding, is liable to be disbarred, and shall forfeit to the injured party treble damages to be recovered in a civil action.

Every attorney or counselor at law who shall be guilty of any deceit or collusion, or shall consent thereto, with intent to deceive the court or any party, or who shall delay his client's suit with a view to his own gain, shall be guilty of a misdemeanor and, in addition to the punishment prescribed by law therefor, he shall forfeit to the party injured treble damages, to be recovered in a civil action. Similarly, N.Y.Jud.Law (McKinney), § 487 provides:

§ 487 Misconduct by attorneys
An attorney or counselor who:
1. Is guilty of any deceit or collusion, or consents to any deceit or collusion, with intent to deceive the court or any party; or,
2. Wilfully delays his client's suit with a view to his own gain; or, wilfully receives any money or allowance for or on account of any money which he has not laid out, or becomes answerable for,
Is guilty of a misdemeanor, and in addition to the punishment prescribed therefor by the penal law, he forfeits to the party injured treble damages, to be recovered in a civil action. Added L.1965, c. 1031, § 123, eff. Sept. 1, 1967.

23. We recognize that in *Vernon Fire & Cas. Ins. Co. v. Thatcher,* (1972) 152 Ind.App. 692, 285 N.E.2d 660, this court held that actionable fraud did not require proof of an intent to deceive, and repudiated the language in *Automobile Underwriters, Inc. v. Rich, supra,* which was to the contrary. *See, e. g.,* Emerson, *Misrepresentation in Indiana: What Hath Fraud Wrought,* 53 Ind.L.J. 559 (1978). We hold that an action for attorney deceit pursuant to IC 34–1–60–9, *supra,* is founded on the common law action of deceit and does require an intent to deceive. *See Barelli v. Levin, supra,* holding that IC 34–1–60–9 requires an intent to deceive as a prerequisite to liability.

The damages Jane alleges in her amended complaint are that the property she received pursuant to the settlement agreement is valued much less than as represented by Robert and the property she received pursuant to the settlement agreement is not a fair division of the parties' property. However, because the settlement agreement has not, at this time, been incorporated and merged into the decree, these damages are nonexistent.[24] Should the property disposition ultimately decreed be more favorable than the settlement agreement, Jane may not sustain the damage she now alleges.

The trial court did not err, therefore, in deciding Jane's Amended Complaint failed to state a claim for relief.

## II

### CHALLENGED PROCEDURAL ERRORS IN DISMISSING AMENDED COMPLAINT: JUNE 17 "JUDGMENT"; MOTION TO STRIKE AMENDED COMPLAINT [25]

Jane contends the trial court erred by entering its June 17 judgment dismissing her original complaint and in granting Robert's motion to strike her amended complaint. Because Robert's motion for judgment on the pleadings, under Indiana Rules of Procedure Trial Rule 12(C), challenged her original complaint for failure to state a claim upon which relief can be granted, she argues it should have been treated and disposed of in the same manner as a motion to dismiss, Indiana Rules of Procedure, Trial Rule 12(B)(6). The trial court therefore erred in entering a judgment dismissing her original complaint the same day as its ruling because T.R. 12(B) allows her an absolute right to amend a pleading dismissed under T.R. 12(B)(6). Jane also contends Robert's motion to strike, Indiana Rules of Procedure, Trial Rule 12(F), was not the proper procedural tool to seek dismissal of her amended complaint.

Robert responds that a motion for judgment on the pleadings under T.R. 12(C) should be treated and disposed of in the same manner as a motion for summary judgment, Indiana Rules of Procedure, Trial Rule 56. Thus, he contends when his T.R. 12(C) motion was sustained the trial court properly entered judgment. Jane's remedy at that time was to file a motion to correct errors, Indiana Rules of Procedure,

24. In this regard, consequential or special damages are recoverable in an action for deceit. *See e. g. Rose v. Wallace*, (1858) 11 Ind. 112; *Hartford Life Ins. Co. v. Hope*, (1907) 40 Ind. App. 354, 81 N.E. 595. Such damages, however, to be recoverable, must be specifically pled. T.R. 9(G); *see also Anderson v. Evansville Brewing Ass'n* (1912) 49 Ind.App. 403, 97 N.E. 445. In the case at bar, Jane has pleaded no special damages.

25. In summary, the proceedings were as follows:

| | |
|---|---|
| March 15, 1974 | Dissolution Decree entered by Adams Circuit Court dissolving parties' marriage |
| December 26, 1974 | Jane files three-count complaint in Adams Circuit Court |
| January 14, 1975 | Robert filed Motion for Enlargement of Time in Which to Plead; motion granted for period of thirty (30) days |
| February 14, 1975 | Robert files Motion to Strike; Robert files Answer |
| March 5, 1975 | Cause venued to Wells Circuit Court upon Jane's motion |
| May 23, 1975 | Robert files Motion for Judgment on the Pleadings |
| May 30, 1975 | Trial court hears arguments on Robert's Motion for Judgment on the Pleadings |
| June 17, 1975 | Trial court enters judgment dismissing Jane's complaint |
| June 24, 1975 | Jane files Amended Complaint in Wells Circuit Court |
| July 14, 1975 | Robert files Motion to Strike Amended Complaint |
| July 23, 1975 | Jane files response to Robert's Motion to Strike |
| August 11, 1975 | Trial court hears arguments on Robert's Motion to Strike |
| August 15, 1975 | Jane files Motion to Correct Errors addressing June 17, 1975 Judgment |
| September 8, 1975 | Trial court overrules Jane's Motion to Correct Errors and sustains Robert's Motion to Strike Amended Complaint |
| September 12, 1975 | Jane files second Motion to Correct Errors addressing the September 8, 1975 order |
| September 23, 1975 | Trial court overrules Jane's second Motion to Correct Errors |

Trial Rule 59. Furthermore, Robert contends, since Jane's sole remedy was to file a motion to correct errors, his T.R. 12(F) motion was the proper device to seek the dismissal of an improper pleading following entry of judgment. Alternatively, Robert argues the additional facts alleged in the complaint still failed to state a claim upon which relief could be granted.

## A.

### Trial Rule 12(C)

#### Motion for Judgment on the Pleadings

■ The disagreement between the parties to this appeal as to the nature and treatment of a T.R. 12(C) motion for judgment on the pleadings is understandable, for few Indiana decisions have addressed the motion and the holdings of those cases are prone to malentendu.[26] Moreover, the federal authorities do not agree on the treatment of a motion for judgment on the pleadings.[27]

A T.R. 12(B)(6) defense of failure to state a claim upon which relief can be granted

may properly be raised by way of a T.R. 12(C) motion for judgment on the pleadings. Indiana Rules of Procedure, Trial Rule 12(H)(2);[28] *DeHart v. Anderson, supra.* When so utilized, a motion for judgment on the pleadings should be treated in the same manner as a motion made pursuant to T.R. 12(B)(6) made solely on the pleadings because it is testing the sufficiency of the complaint to state a redressable claim. Furthermore, as in the case of T.R. 12(B)(6) motions, *see, Parrett v. Lebamoff,* (1979) Ind.App., 383 N.E.2d 1107, if a T.R. 12(C) motion raising the defense of failure to state a claim upon which relief can be granted is sustained, the non-movant has an absolute right to correct any deficiencies within ten days after service of notice of the court's order sustaining the motion. *See, DeHart v. Anderson, supra,* 383 N.E.2d at 437.

■ When, however, the motion is predicated upon matters extraneous to the pleadings, the motion should be treated in the same manner as a motion for summary judgment made pursuant to T.R. 56.[29] In-

---

**26.** *See, e. g., Forks v. City of Warsaw,* (1971) 257 Ind. 237, 273 N.E.2d 856 (trial court properly entered judgment on the pleadings in response to defendant's motion to dismiss where the facts, uncontested by defendant, were completely presented by plaintiff's complaint and the exhibits attached thereto); *Estate of Tanasijevich v. City of Hammond,* (1978) Ind.App., 383 N.E.2d 1081 (a motion for judgment on the pleadings which is supported by matters outside the pleadings is automatically converted into a motion for summary judgment); *DeHart v. Anderson,* (1978) Ind.App., 383 N.E.2d 431 (a motion under T.R. 12[C] is determined in the same manner as a motion under T.R. 12[B][6]); *Jenkins v. Hatcher,* (1975), 163 Ind.App. 95, 322 N.E.2d 117 (where defendants, for purposes of motion, admitted all facts alleged by plaintiff and confined themselves to a discussion of whether such facts entitled plaintiff to relief, defendant's motion for summary judgment would be treated as a motion for judgment on the pleadings).

**27.** *Compare, King v. Gemini Food Services, Inc.,* (E.D.Va.1976) 438 F.Supp. 964, *aff'd.* (4 Cir.), 562 F.2d 297, *cert. den.,* 434 U.S. 1065, 98 S.Ct. 1242, 55 L.Ed.2d 766 (test applicable for judgment on the pleadings or summary judgment is whether or not, when viewed in light most favorable to non-movant, no genuine issues of material fact remains and the case can

be decided as a matter of law), *with Shapiro v. Merrill Lynch, Pierce, Fenner & Smith,* (S.D.N.Y.1972) 353 F.Supp. 264, *aff'd.,* (2 Cir.), 495 F.2d 228 (even though defense of failure to state a claim upon which relief can be granted is asserted through procedural device of motion for judgment on the pleadings, the standards employed in determining the motion will be the same as if the defense had been raised prior to the closing of the pleadings).

**28.** Trial Rule 12(H)(2) provides "[a] defense of failure to state a claim upon which relief can be granted . . . may be made in any pleading permitted . . . or by motion for judgment on the pleadings . . . ."

**29.** Ind. Rules of Procedure, Trial Rule 12(B)(8) provides, in part:

 If, on a motion, asserting the defense number (6), to dismiss for failure of the pleading to state a claim, upon which *relief can be granted,* matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56. In such case, all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

deed, such treatment seems apparent when one considers the difference between T.R. 12(B)(6) and T.R. 56 motions. The basic purpose of a T.R. 12(B)(6) motion to dismiss is to test the legal sufficiency of the complaint to state a redressable claim. *See,* Civil Code Study Commission Comments, 1 *W. Harvey, Indiana Practice and Procedure* at 601 (1969); *C. Wright & A. Miller,* 5 *Federal Practice and Procedure* § 1356 at 590 (1969). Thus, the motion is properly utilized to test the legal sufficiency of the complaint; or, stated differently, to test the law of the claim, not the facts that support it. *See, Mobile Enterprises, Inc. v. Conrad,* (1978) Ind.App., 380 N.E.2d 100, 102.

The purpose of a T.R. 56 motion for summary judgment, on the other hand, is to *go behind the pleadings* to determine if evidence exists to support allegations or denials in the pleadings. *See, Indiana Suburban Sewers, Inc. v. Hanson,* (1975) 166 Ind. App. 165, 334 N.E.2d 720. A T.R. 56 motion, unlike a T.R. 12(B)(6) motion, does not test the sufficiency of the pleadings but tests whether the allegations in the pleadings have any factual basis. Thus, T.R. 56 requires the parties, before trial, to *bring forward evidence* from which the material facts alleged in the pleadings can be inferred.

Thus, the test to be applied when ruling on a T.R. 12(B)(6) motion or a T.R. 12(C) motion that raises the defense of failure to state a claim upon which relief can be granted is whether, in the light most favorable to the non-moving party and with every intendment regarded in his favor, the complaint is sufficient to constitute any valid claim. *See, State v. Rankin,* (1973) 260 Ind. 228, 294 N.E.2d 604; *Gladis v. Melloh,* (1971) 149 Ind.App. 466, 273 N.E.2d 767. In applying this test the court may look only at the pleadings, with all well-pleaded material facts alleged in the complaint taken as admitted, supplemented by any facts of which the court will take judicial notice. *See, George C. Frey Ready-Mixed Concrete, Inc. v. Pine Hill Concrete Mix Corp.,* (2nd Cir. 1977) 554 F.2d 551.

It appears from the record that the trial court properly dismissed Jane's original complaint.[30] Paragraph VIII of Robert's answer raised the defense of failure to state a claim upon which relief can be granted. His subsequently filed motion for judgment on the pleadings raised the same defense. The essence of Robert's T.R. 12(C) motion urged the facts alleged in the complaint barred Jane's claim by invoking the doctrine of *res judicata.*[31] In ruling on

Similarly, T.R. 12(C) provides, in part:

If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

**30.** It should be noted that, as a general rule, an amended pleading replaces the original pleading for all purposes. *McKenna v. Turpin,* (1958) 128 Ind.App. 636, 151 N.E.2d 303. Thus when a party amends a pleading after a successful challenge, the original pleading is superseded and the right to appeal the ruling on the challenge is lost. *See Parrett v. Lebamoff, supra; DeHart v. Anderson, supra.* Hence, in the case *sub judice,* Jane, by filing an amended complaint, technically waived any error concerning the trial court's ruling on her original complaint. However, due to the confusion amongst the parties to this appeal as to the nature and effect of the trial court's dismissal

of Jane's original complaint and, therefore, from which "judgment" she is appealing, we have addressed the issues raised concerning the trial court's dismissal of the original complaint.

**31.** Pursuant to developing case law, the defense of *res judicata* may be raised by a T.R. 12(B)(6) motion if the defense appears on the face of the complaint. *Middelkamp v. Hanewich,* (1977) Ind.App., 364 N.E.2d 1024. Similarly, *res judicata* may be raised by a T.R. 12(C) motion for failure to state a claim upon which relief can be granted, if the defense appears on the face of the complaint. *Cf., DeHart v. Anderson, supra.* In this regard it should be noted that in most instances where *res judicata* is raised by way of a pretrial motion, the motion will be treated as a motion for summary judgment. This result attains because the *res judicata* effect of a prior judgment is normally determined by ascertaining what was litigated and settled in the prior adjudication, which generally requires the introduction of the prior record. *See Blake v. Blake,* (1979) Ind.App.,

the T.R. 12(C) motion, the court had only to examine Jane's complaint to determine it did not state a claim upon which relief could be granted. Because no matters outside the pleadings were utilized in determining the *res judicata* defense, the trial court properly treated the T.R. 12(C) motion as a T.R. 12(B)(6) motion.

The trial court did err, however, in entering a judgment dismissing the complaint. As noted earlier, T.R. 12(B) allows a party an absolute right to amend a pleading when a motion to dismiss for failure to state a claim is sustained. Jane had an absolute right to correct any deficiencies within ten days after service of the court's order sustaining the motion.

## B.

### Trial Rule 12(F)

### Motion to Strike

■ Notwithstanding its error in entering the June 17 judgment, the trial court did, however, properly strike and in essence dismiss Jane's amended complaint pursuant to Robert's T.R. 12(F) motion to strike

alleging the amended complaint failed to state a claim upon which relief can be granted.[32]

■ We do not agree with Jane's contention that the motion to strike was an improper device to seek dismissal of her amended complaint. Under federal practice, a motion to strike, Fed.R.Civ.P. 12(f) functions similarly to a motion to dismiss for failure to state a claim, Fed.R.Civ.P. 12(b)(6), when the motion to strike is properly used to test legal sufficiency of an answer.[33] *See Ham v. Aetna Life Ins. Co.,* (N.D.Okl.1968) 283 F.Supp. 153. Therefore, in federal practice it may be generally stated the motion to strike is the *plaintiff's* counterpart to a motion to dismiss for failure to state a claim. Under Indiana's rules, however, a motion to strike is properly utilized to strike "any insufficient claim or defense." T.R. 12(F). Therefore, our rules have expanded the use of a motion to strike to include an attack upon any insufficient claim, including an attack upon sufficiency of the complaint to state a redressable claim.[34] When a motion to strike attacks

391 N.E.2d 848; *Dygert v. Dygert,* (1892) 4 Ind.App. 276, 29 N.E. 490. Thus the determination of a *res judicata* defense generally requires the presentation and consideration of matters outside the pleadings, thereby necessitating summary judgment treatment.

32. Robert is correct in his contention that a motion to strike is properly utilized to have an improper pleading struck. For example, a motion to strike is properly utilized when orders or rules of the court have not been satisfied, *see e. g., Green v. Garrott* (W.D.Mo.1976) 71 F.R.D. 680 (state prisoner's refusal to fully and properly answer questions set forth in complaint forms provided by court and refusal to supply court with required number of copies of completed complaint forms, proper grounds for striking the form civil rights complaint as nonresponsive to prior court order); *Kahn v. Sec. of Health, Education and Welfare,* (D.Mass. 1971) 53 F.R.D. 241 (bad faith demonstrated by refusal to obey order to produce documents for *in camera* inspection proper grounds for striking portion of defendants' answer); or when a pleading has been filed without the court's approval, when necessary. *See e. g., Readmond v. Matsushita Elec. Corp. of America,* (E.D.Pa. 1972) 335 F.Supp. 1073 (defendants' motion to strike properly granted where plaintiff's answers to defendants' motion for summary judg-

ment included new allegations which were added without leave of court). In the instant case, however, as noted *supra,* Jane had an absolute right to amend her complaint and, therefore, she did not need the trial court's permission to amend her complaint.

33. "Upon motion . . . or upon the court's own initiative . . . the court may order stricken from any pleading any insufficient defense . . .." Fed.R.Civ.P. 12(f).

34. *Compare* Federal Rule 12(f) providing:

Motion to Strike. Upon motion made by a party before responding to a pleading or, if no responsive pleading is permitted by these rules, upon motion made by a party within 20 days after the service of the pleading upon him or upon the court's own initiative at any time, *the court may order stricken from any pleading any insufficient defense* or any redundant, immaterial, impertinent, or scandalous matter.

with Indiana Trial Rule 12(f) providing:

Motion to strike. Upon motion made by a party before responding to a pleading, or, if no responsive pleading is permitted by these rules, upon motion made by a party within twenty [20] days after the service of the

the legal sufficiency of the complaint, the trial court should apply the same standards for granting the relief as it would have employed had the motion been brought under T.R. 12(B)(6).

Jane's amended complaint contained basically the same allegations as her original complaint, additionally alleging only that the issue of the parties' property rights was never presented to or adjudicated by the trial court in the dissolution proceeding. These facts, admitted by Robert, did not change the applicable rule of *res judicata*. The trial court had only to consider these facts to properly determine Jane's amended complaint, as did her original complaint, failed to state a claim upon which relief could be granted. Because the trial court did not need to consider any matters outside the amended complaint it properly granted Robert's motion to strike as allowed by T.R. 12(F).

The judgment of the trial court is, therefore, affirmed.

BUCHANAN, C. J., concurs.

CHIPMAN, J., sitting by designation, concurs.

pleading upon him or at any time upon the court's own initiative, *the court may order stricken from any pleading any insufficient claim or defense* or any redundant, immaterial, impertinent, or scandalous matter. [emphasis added]