Arthur E. LOOMIS, III, and, Linda D.
Loomis, Appellants–Plaintiffs,

v.

AMERITECH CORP., Eichhorn &
Eichhorn, and John McCrum,
Appellees–Defendants.

No. 45A03–0012–CV–474.

Court of Appeals of Indiana.

Feb. 27, 2002.

Glenn S. Vician, Bowman, Heintz, Boscia & Vician, P.C., Merrillville, IN, Attorney for Appellant.

David C. Jensen, Robert J. Feldt, Scott B. Cockrum, Eichhorn & Eichhorn, Hammond, IN, Attorneys for Ameritech Corp.

Peter C. Bomberger, Stephen A. Tyler, Blackmun, Bomberger, Moran & Tyler, Highland, IN, Attorneys for John McCrum and Eichhorn & Eichhorn.

## OPINION

MATTINGLY–MAY, Judge.

Arthur E. Loomis, III, ("Arthur") and Linda D. Loomis (collectively, the "Loom-ises") appeal the trial court's grant of motions for judgment on the pleadings in favor of Ameritech Corp. ("Ameritech") and Attorney John McCrum ("McCrum") and the law firm of Eichhorn & Eichhorn ("Eichhorn") (collectively "the Attorneys"). The Loomises raise two issues for our review, which we restate as: 1) whether the trial court erred by not expanding the tort of intentional interference with civil litigation by spoliation of evidence to include the spoliation of testimonial evidence; 2) whether Ameritech and the Attorneys are immune from suit because their actions arose out of their performance of their duties in a judicial proceeding; and 3) whether the Loomises' complaint sets out circumstances whereby relief could be granted under various other theories of liability.

We affirm.

## FACTS AND PROCEDURAL HISTORY

In August of 1996, the Loomises filed a personal injury lawsuit against Ameritech arising out of a collision between Arthur's van and an Ameritech truck. Ameritech asserted release as one of their affirmative defenses.[1] One of the issues that arose in the personal injury lawsuit was whether Ameritech fraudulently induced Arthur to sign a release that discharged all personal injury claims under the pretense that the release was needed only in order for Ameritech to pay for the repairs to Arthur's van. Darrel Wright ("Wright") witnessed the signing of the release.

On December 8, 1999, while the Loomises' personal injury lawsuit against Ameritech was pending, the Loomises filed the suit that is the subject of this appeal

---

**1.** This affirmative defense was subsequently withdrawn by Ameritech.

against Ameritech and the Attorneys. The Loomises' complaint consisted of six counts. Counts I, II, and III apparently restated the causes of action from the personal injury suit.[2] Counts IV and V related to alleged misconduct on the part of the Attorneys arising out of their defense of Ameritech in the personal injury suit. Count VI [3] alleged Ameritech was liable for the actions of the Attorneys performed in the defense of Ameritech.

In their complaint the Loomises allege that in December of 1997, McCrum, as a member of the Eichhorn law firm on behalf of its client Ameritech, made false statements to non-party lay witness Wright about Arthur's deposition testimony "for the purpose of poisoning the attitude of and adversely affecting the testimony of Darrel Wright towards [Arthur] about the facts and circumstances that surrounded the modification and signing of the Ameritech Corp. release." (R. at 31.)

The complaint further alleges that the Attorneys knowingly and intentionally presented false statements to Wright in an effort or scheme to intentionally induce Wright to sign an affidavit they drafted that contained false and misleading statements concerning the facts and circumstances of Arthur's signing of the release. Wright's deposition included some testimony different from that in his affidavit. An Eichhorn attorney impeached Wright with the statements contained in his affidavit and later sought to strike Wright's deposition testimony due to the inconsistent statements contained in his affidavit.

The complaint further alleged that the Loomises "have suffered certain injuries, damages, and attorney fees" due to the wrongful conduct of Ameritech and its attorneys. *Id.* at 33–36. Ameritech and the Attorneys filed motions for judgment on the pleadings pursuant to Ind. Trial Rule 12(C) stating that the Loomises had not stated a claim upon which relief could be granted. The trial court conducted a hearing and, on December 1, 2000, granted Ameritech's and the Attorneys' motions for judgment on the pleadings.

## DISCUSSION AND DECISION

### Standard of Review

T.R. 12(C) provides that "[a]fter the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." Like a motion to dismiss for failure to state a claim pursuant to T.R. 12(B)(6), a T.R. 12(C) motion attacks the legal sufficiency of the pleadings. *Richards–Wilcox, Inc. v. Cummins,* 700 N.E.2d 496, 499 (Ind.Ct.App.1998). Our review of the trial court's ruling on a T.R. 12(C) motion is *de novo* and a motion for judgment on the pleadings will not be granted unless it is clear from the face of the complaint that under no circumstances could relief be granted. *Id.* In reviewing a T.R. 12(C) dismissal, courts of appeal accept as true all well-pleaded facts set out in the complaint. *Schuman v. Kobets,* 716 N.E.2d 355, 356 (Ind.1999). We look only to the pleadings in making this assessment. *Id.*

### Conduct During Personal Injury Lawsuit

The Loomises are seeking to maintain a suit against the Attorneys for conduct that occurred in the course of their defense of Ameritech in the personal injury lawsuit. The Loomises argue that the tort of intentional interference with civil litigation by

---

**2.** The Loomises do not appeal the trial court's ruling as to counts I, II, and III of the complaint.

**3.** Count VI was incorrectly labeled as a second count V in the Loomises' complaint.

spoliation of evidence should be expanded to include testimonial evidence. Additionally, the Loomises argue that a cause of action exists against the Attorneys on the basis of the attorney deceit statute,[4] attorney common law liability for fraud, undue influence, fraud in the inducement, abuse of confidential relationship, breach of an implied covenant of good faith and fair dealing, and obstruction of justice. Ameritech, they argue, is liable for the acts of its attorneys. Ameritech and the Attorneys argue that even if the facts alleged in the Loomises' complaint were true, the Loomises have no cause of action under Indiana law.

### 1. Spoliation of Testimonial Evidence

The Loomises allege they have a cause of action against the Attorneys[5] based on the tort of intentional interference with civil litigation by spoliation of evidence. The Loomises argue the Attorneys had a duty to maintain and preserve the integrity of Wright's testimonial evidence and that the "spoliation occurred when Ameritech's lawyers impeached the lay witness [Wright] with false and misleading statements that those same lawyers had drafted, and then moved to strike all testimony of the non-party lay witness." (Br. of Appellant at 8.) In essence, the Loomises invite us to recognize for the first time that the doctrine of spoliation of evidence includes the spoliation of testimonial evidence. We must decline their invitation.

Spoliation of evidence consists of "[t]he intentional destruction, mutilation, alteration, or concealment of evidence, usually a document. If proved, spoliation may be used to establish that the evidence was unfavorable to the party responsible." *Cahoon v. Cummings*, 734 N.E.2d 535, 545

(Ind.2000) (*quoting Black's Law Dictionary* 1409 (7th ed.1999)). "In Indiana, the exclusive possession of facts or evidence by a party, coupled with the suppression of the facts or evidence by that party, may result in an inference that the production of the evidence would be against the interest of the party which suppresses it." *Id.* (*quoting Porter v. Irvin's Interstate Brick & Block Co.*, 691 N.E.2d 1363, 1364–65 (Ind.Ct.App.1998)). In *Cahoon*, our supreme court found that the spoliation rule applies to altered as well as destroyed documents. 734 N.E.2d at 545.

The Loomises are not seeking an evidentiary inference for the spoliation; rather, they are pursuing a tort action. The first case in this jurisdiction to address whether a tort action exists for spoliation of evidence was *Murphy v. Target Products*, 580 N.E.2d 687 (Ind.Ct.App.1991). Murphy filed a products liability action against the manufacturer of an allegedly defective power saw. He later amended his complaint to include an action against his employer for spoliation of evidence arising out of the employer's failure to preserve the allegedly defective saw. We concluded that the employer had no duty to maintain evidence for the employee's possible product liability action:

> We therefore hold that at least in the absence of an independent tort, contract, agreement, or special relationship imposing a duty to the particular claimant, the claim of negligent or intentional interference with a person's prospective or actual civil litigation by the spoliation of evidence is not and ought not be recognized in Indiana.

*Id.* at 690 (citation omitted).

In *Thompson v. Owensby*, 704 N.E.2d 134, 137 (Ind.Ct.App.1998), this court

---

4. Ind.Code § 33–21–1–8.

5. The Loomises also accuse Ameritech of spoliation of evidence. As explained below, the rule against collateral attacks on judgments

bars this suit against Ameritech. We therefore do not address the Loomises' arguments as they pertain to Ameritech.

found that a tort action existed for spoliation of evidence based upon the special relationship that existed between a third-party claimant and a liability insurance carrier. In *Thompson*, a dog broke free from its restraining cable and attacked Nicole Thompson. The Thompsons filed suit against the dog owners, the dog owners' landlords, and the manufacturer of the dog-restraining cable. The insurance company for the dog owner's landlord investigated the claim and took possession of the dog-restraining cable. The insurance company lost the cable. This court held that the insurance company had a duty to maintain the evidence. *Id.* at 140.

Thus far spoliation of evidence, whether as an evidentiary inference or as a tort, has been limited to physical evidence. *See, e.g., Cahoon*, 734 N.E.2d at 545 (medical record); *Porter*, 691 N.E.2d at 1365 (truck's drive line and related parts); *Thompson*, 704 N.E.2d at 135 (dog-restraining cable). However, the Loomises argue based on *Thompson* that the Attorneys owed the Loomises a duty to maintain testimonial evidence. We disagree, as the issue in *Thompson* was whether an insurance company owed a duty to a third party claimant to maintain physical evidence (dog-restraining cable). *Thompson* does not address the issue of whether the spoliation of evidence doctrine extends beyond physical evidence.

The Loomises offer no authority to the effect that spoliation of evidence has been expanded to include testimonial evidence. Rather they seem to be arguing that because our supreme court in *Cahoon* expanded the spoliation of evidence doctrine to include not just the destruction but also the alteration of documentary evidence "there is also a basis to expand the spoliation doctrine further, to cover cases where a party spoils or alters testimonial evidence through trickery, artifice or fraud."

(Br. of Appellant at 19.) The Loomises, however, do not enlighten us as to what that basis might be. Our supreme court's determination in *Cahoon* that spoliation of evidence includes the alteration of a document does not support expanding the doctrine beyond physical evidence into the uncertain area of testimonial evidence.

■ In the context of spoliation of evidence, physical evidence is different from testimonial evidence. For the spoliation of evidence doctrine to apply, the evidence must be exclusively· possessed and must be made unavailable, destroyed, or altered. *See Cahoon*, 734 N.E.2d at 545. Physical evidence is readily capable of being evaluated in terms of being exclusively possessed and being made unavailable, destroyed, or altered. Testimonial evidence does not lend itself to being similarly evaluated.

In attempting to fit testimonial evidence into a spoliation of evidence situation, the Loomises argue that with regard to exclusive possession of Wright's testimony

Ameritech's attorneys were in the exclusive presence of [Wright]. In effect, Ameritech had exclusive custody and control of [Wright] at the time the illicit conduct occurred. This prevented Loomis from having any opportunity to correct or challenge the false statements by the Eichhorn lawyers that induced the witness to sign the contested affidavit.

(Reply Br. of Appellant at 13.)

■ We decline to hold that an attorney can exclusively possess testimonial evidence simply by meeting with a witness outside of the presence of the opposing party. Even if we were to ignore the exclusive possession of evidence requirement, Wright's testimony has not been made unavailable, destroyed, or altered. Despite the allegedly false affidavit,

Wright's testimony is still available to the Loomises. Nothing prevents the Loomises from having Wright testify about witnessing Arthur's signing of the release. Nor has Wright's testimony been altered. The affidavit may cast doubt upon Wright's credibility as a witness, but if the Attorneys caused Wright to sign the affidavit containing false statements then the Loomises can present evidence to that effect and move to strike the affidavit.

As Ameritech points out: "In practice, witnesses frequently change or alter their testimony from one time to the next, whether it be as a result of fading memory, lost perception, new recollection, perjury, preparation, or design." (Br. of Appellee Ameritech at 19.) Expanding spoliation of evidence to allow a party to sue opposing attorneys when a witness changes his or her testimony, even if the change in testimony is alleged to be a result of misconduct, would be untenable. Such a policy could discourage attorneys from interviewing witnesses for fear that if a witness changes his or her testimony it could give rise to a suit based upon spoliation. We decline to expand the tort of intentional interference with civil litigation by spoliation of evidence to include the spoliation of testimonial evidence.

### 2. *Immunity*

■ Ameritech and the Attorneys argue they are immune from the Loomises' suit due to the rule against collateral attacks on judgments. "It has long been the law in Indiana that a litigant defeated in a tribunal of competent jurisdiction may not maintain an action for damages against his adversary or adverse witnesses on the ground the judgment was obtained by false and fraudulent practices or by false and forced evidence." *Anderson v. Anderson*, 399 N.E.2d 391, 399 (Ind.Ct. App.1979). "The courts will not encourage

continuous litigation." *Hermon v. Jobes*, 209 Ind. 196, 198 N.E. 316, 319 (1935). If a judgment is procured by fraud the proper procedure is to attack the judgment in a direct proceeding and not by way of collateral attack. *Anderson*, 399 N.E.2d at 399–400.

■ We note that when the Loomises filed the suit that is the subject of this appeal, the original personal injury suit was still pending; therefore, there is no "judgment" to collaterally attack. However, in *Dean v. Kirkland*, 301 Ill.App. 495, 23 N.E.2d 180, 188 (1939), the court applied the rule against collateral attacks on judgments where the plaintiff in a pending suit for slander brought a subsequent suit against the opposing party, his attorneys, and others, for alleged misconduct, including the procuring of false testimony in the defense of the original pending suit. The court affirmed the dismissal of the plaintiff's subsequent suit stating: "the tactics pursued by plaintiff in the case at bar would encourage and multiply vexatious suits and lead to interminable litigation. Each law suit would give birth to an infinite series of suits." *Id.* We believe that the rule against collateral attacks on judgments should apply to collateral attacks on pending litigation in situations such as this where a litigant seeks to maintain a separate suit against the opposing party and its attorneys for alleged misconduct involving a witness' testimony in an on-going litigation.

Ameritech argues that the rule against collateral attacks on judgments prevents the Loomises from maintaining suit against Ameritech for the alleged misconduct of their attorneys in the defense of the Loomises' personal injury lawsuit. The Loomises cannot maintain suit against Ameritech as the adverse party in the previous litigation based on false and fraudulent practices or by false and forced

evidence. *See Anderson*, 399 N.E.2d at 399. Therefore, the trial court properly dismissed the Loomises' complaint as it pertained to Ameritech.

Having concluded that Ameritech is off the hook for both its own and its attorneys' alleged misconduct in the previous litigation, we next determine whether the Attorneys can similarly avail themselves of the rule against collateral attacks on judgments. In *Meier v. Pearlman*, 401 N.E.2d 31, 39 (Ind.Ct.App.1980), we expanded the rule against collateral attacks on judgments to include suits against opposing attorneys:

> We believe that the rule which protects a party or a witness against suits for damages brought by an unsuccessful litigant predicated upon the alleged fraud or perjury of such party or witness in defeating the claim should apply with equal force to attorneys representing the successful litigant in the initial action. The same public policy of preventing unwarranted collateral attacks upon judgments which have not been vacated, and barring the multiplication of vexatious litigation exists whether the defendant be a former party, witness, or lawyer.

However, the rule against collateral attacks on judgments may not protect attorneys from suits brought by opposing parties in litigation to the same extent as it protects parties and witnesses. In *Meier*, the losing plaintiff in a prior litigation, Meier, brought an action against the opposing side's attorneys alleging that the attorneys engaged in various acts of misconduct during the course of the previous litigation including suppression of evidence, presentation of false evidence, distortion of the facts and the truth, production of false witnesses, production of false evidence, and limitation of the scope and reach of Meier's proof and damages. *Mei-*

*er* set forth the immunity rule that "[a]bsent fraud, collusion, malicious or tortious conduct on the part of an attorney, the rule is equally well established that no liability to third parties arises from the attorney's conduct as an attorney for another." *Id.* at 40 (*citing McDonald v. Stewart*, 289 Minn. 35, 182 N.W.2d 437 (1970)). We determined the attorneys in *Meier* were immune from liability unless there was some showing of fraud, collusion, or malicious or tortious conduct on their part towards Meier. 401 N.E.2d at 41.

In affirming the summary judgment in favor of the attorneys we stated

> the record here is totally devoid of any factual basis which would support, even inferentially, a finding that there was a genuine issue of fact that [the attorneys] were guilty of any such wrongful conduct as might give rise to any liability on the part of [the attorneys] to Meier. There being no such facts shown in the record, [the attorneys], acting as attorneys, were within the immunity rule stated in *McDonald v. Stewart, supra.* Further, under such circumstances, the action against [the attorneys] here is clearly the type of vexatious, multiple suits which it is the policy of the law to avoid, and constitutes an impermissible collateral attack upon the judgment in the false imprisonment case.

*Id.* Accordingly, the rule against collateral attacks on judgments will not prevent a party from maintaining a suit against the opposing attorneys in a litigation if it can make a showing that the opposing attorneys engaged in fraud, collusion, malicious or tortious conduct towards the party.

However, the Attorneys argue that they are absolutely immune from liability for their actions as the opposing attorneys in the personal injury lawsuit. In support of their position, they cite to *Hamed v. Pfeif-*

*er,* 647 N.E.2d 669, 670 (Ind.Ct.App.1995), wherein the plaintiffs brought suit against Pfeifer, the opposing side's attorney in a previous litigation, for using as evidence in the previous litigation a tape recording of an alleged illegally intercepted conversation. The court held that Pfeifer's conduct with regard to disclosure or use of the tape recording was within the scope of his litigation-related duties and, therefore, as a matter of law, Pfeifer was afforded immunity from liability. *Id.* at 672.

We stated that Pfeifer had a responsibility for analyzing, organizing, evaluating, and ultimately presenting the evidence that supported his client's defense. *Id.* No evidence was presented to show that Pfeifer participated in the alleged illegal wiretap or had any knowledge prior to entering into the previous litigation that the tape recording may have been illegally obtained. Pfeifer offered the tape recording into evidence only after the court ruled that it was admissible evidence and could be disclosed to the jury.

The Attorneys argue that interviewing Wright and obtaining his affidavit regarding the circumstances under which Arthur signed the release was within their litigation-related duties and therefore they are entitled to absolute immunity. We agree that interviewing witnesses and obtaining their affidavits are litigation-related duties; however, the Loomises have alleged that the Attorneys went beyond merely interviewing Wright and obtaining his affidavit. The Loomises have alleged that the Attorneys purposefully obtained and presented false evidence.

We decline to interpret *Hamed* as providing opposing attorneys with absolute immunity for everything they may do during the course of a litigation as long as it can be considered to be a litigation-related

duty. There may be some instances where suits should be allowed, as attorneys are not immune from liability from suits brought by opposing parties when their actions relating to obtaining and presenting evidence amounting to fraud, collusion, or malicious or tortious conduct towards the opposing party. *Meier,* 401 N.E.2d at 41. We must therefore look to the Loomises' complaint to determine if the Loomises have overcome the immunity rule by alleging any such cause of action against the Attorneys under Indiana law.

### 3. *Other Theories of Liability*

The Loomises argue that a cause of action exists against the Attorneys on the basis of the attorney deceit statute, attorney common law liability for fraud, undue influence, fraud in the inducement, abuse of confidential relationship, breach of an implied covenant of good faith and fair dealing, and obstruction of justice.

#### a. *Attorney Deceit Statute*

▮ Under the attorney deceit statute: [6]

An attorney who is guilty of deceit or collusion, or consents thereto, with intent to deceive a court or judge or a party to an action or judicial proceeding, commits a Class B misdemeanor, and he shall also forfeit to the party injured treble damages, recoverable in a civil action.

Ind.Code § 33–21–1–8. The Loomises argue the attorney deceit statute specifically provides them with a cause of action against the Attorneys. However, this court in *Anderson* held that the attorney deceit statute "does not create a new cause of action but, instead, trebles the damages recoverable in an action for deceit." 399

---

6. The Loomises cite to Ind.Code § 34–1–60–9, which was repealed in 1998. The current version of the statute is found at Ind.Code § 33–21–1–8.

N.E.2d at 403. Since the attorney deceit statute does not create an independent cause of action, it cannot be invoked by the Loomises to overcome the rule against collateral attacks on judgments.

b. *Attorney Common Law Liability for Fraud*[7]

 The Loomises also argue they have set out in their complaint a cause of action based on attorney common law liability for fraud. T.R. 9(B) requires that a party specifically allege the elements of fraud. *Weber v. Costin*, 654 N.E.2d 1130, 1134 (Ind.Ct.App.1995). The essential elements of actual fraud are: 1) material misrepresentation of past or existing facts by the party to be charged, 2) which was false, 3) which was made with knowledge or reckless ignorance of the falsity, 4) was relied upon by the complaining party, and 5) proximately caused the complaining party injury. *Rice v. Strunk*, 670 N.E.2d 1280, 1289 (Ind.1996). In addition, the time, place, and substance of the false representations, the facts misrepresented, and an identification of what was procured by fraud must be specifically alleged. *Weber*, 654 N.E.2d at 1134.

 In order to maintain an action based on fraud, the complaining party must have relied upon misrepresentations made by the party to be charged. *Rice*, 670 N.E.2d at 1289. The Loomises' complaint does not allege nor do the Loomises argue that they have in any way relied upon any misrepresentations made by the Attorneys. Further, although the Loomises do allege that McCrum made false statements about Arthur's deposition testimony to Wright, the Loomises do not set forth in the complaint what those false

statements were, nor is the time and place alleged. The Loomises have not pled fraud with specificity as required by T.R. 9(B). Fraud against a witness does not equate to fraud against a party. As the Loomises' complaint does not state a claim based upon fraud, the fraud exception to the rule against collateral attacks on judgments with regard to attorneys does not apply in this case.

c. *Undue Influence, Fraud in the Inducement, and Abuse of a Confidential Relationship*

The Loomises argue there are issues as to whether Wright's affidavit was procured through undue influence, fraud in the inducement, or by abuse of a confidential relationship. Even if true, these allegations standing alone do not provide the Loomises with an independent cause of action against the Attorneys. Although the allegations might support the Loomises' spoliation claim that the Attorneys breached a duty to maintain testimonial evidence by obtaining and presenting false evidence, we have previously determined that no such duty exits. The spoliation rule does not extend to testimonial evidence. Therefore allegations concerning the manner in which the Attorneys obtained Wright's affidavit as opposed to spoliation of the affidavit itself do not provide the Loomises with a basis to overcome the rule against collateral attacks on judgments.

d. *Implied Covenant of Good Faith and Fair Dealing*

 The Loomises also argue that:

---

7. The Loomises also assert in their brief without citation to authority that the conduct of the Attorneys was collusive. However, it is clear from the face of the Loomises' complaint that nowhere in their complaint did the

Loomises allege collusion nor any facts that would amount to collusion. Therefore the Loomises cannot be granted relief based on collusion. *See Richards–Wilcox*, 700 N.E.2d at 499.

Another issue implicit in Loomis' complaint is a cause of action for breaching an implied covenant of good faith and fair dealing. Ameritech Corp., as a self-insured goliath,[8] and the other defendants, as agents of Ameritech, have breached the implied covenant of good faith and fair dealing in their misguided attempts to use the false Eichhorn affidavit in an attempt to gain a tactical advantage over Mr. and Mrs. Loomis by impeaching the credibility of the non-party lay witness whose testimony was favorable to Loomis.

(Br. of Appellant at 22) (footnote added.) There is a legal duty implied in insurance contracts that the insurer deal in good faith with its insured. *Erie Ins. Co. v. Hickman,* 622 N.E.2d 515, 518 (Ind.1993). However, the duty does not extend to claimants other than the insured. *Dimitroff v. State Farm Mut. Auto. Ins. Co.,* 647 N.E.2d 339, 342 (Ind.Ct.App.1995). Further, "self-insurance" is not insurance at all. *Eakin v. Indiana Intergovernmental Risk Mgmt. Auth.,* 557 N.E.2d 1095, 1098 (Ind.Ct.App.1990). The Loomises do not cite to any authority nor do they even attempt to explain how the duty of good faith and fair dealing applies to Ameritech as a self insured entity or to the Attorneys as Ameritech's agents.

■ Ind. Appellate Rule 46(A)(8)(a) requires that "[t]he argument must contain the contentions of the appellant on the issues presented, supported by cogent reasoning. Each contention must be supported by citations to the authorities, statutes, and the Appendix or parts of the Record on Appeal relied on. . . ." Because the Loomises do not present a cognizable argument in support of this assertion, the issue is waived. *See id.; Abbott v. Bates,* 670 N.E.2d 916, 924 (Ind.Ct.App.1996).

### e. *Obstruction of Justice*

Finally the Loomises argue that they "believe that a common law cause of action for obstruction of justice exists as a component of the tort of intentional interference with civil litigation." (Br. of Appellant at 26.) We note that the tort of intentional interference with civil litigation has been recognized in this jurisdiction only with respect to spoliation of evidence. *Levinson v. Citizens Nat'l Bank of Evansville,* 644 N.E.2d 1264, 1268 (Ind.Ct.App.1994). Although the Loomises set forth the provisions of Ind.Code § 35–44–3–4, the criminal statute for obstruction of justice, and argue that the Attorneys' conduct amounts to obstruction of justice, the Loomises fail to cite to any authority or make any argument as to why the tort of intentional interference with civil litigation should be expanded to include obstruction of justice.[9] We decline to expand the tort of intentional interference with civil litigation to include obstruction of justice based solely on the Loomises' assertion that it should be. Because the Loomises do not present a cognizable argument in support of the assertion that obstruction of justice should be recognized as a component of the tort of intentional interference with civil litigation the issue is waived. *See* App.R. 46(A)(8)(a).

---

**8.** Statements that amount to name-calling are not appropriate in appellate argument. *See County Line Towing Inc. v. Cincinnati Ins. Co.,* 714 N.E.2d 285, 290–91 (Ind.Ct.App. 1999). Therefore we strike the instances of name-calling found in the Loomises' brief and reply brief.

**9.** The Loomises also appear to be arguing that Ind.Code § 35–44–3–4 standing alone provides them with a cause of action against the Attorneys for obstruction of justice. However, Ind.Code § 35–44–3–4 is a criminal statute that does not provide for a civil remedy.

## CONCLUSION

The rule against collateral attacks on judgments prevents the Loomises from maintaining this suit against Ameritech. The Attorneys' conduct as attorneys during the defense of Ameritech in the Loomises' original pending suit also falls within the rule against collateral attacks on judgments because it is clear from the face of the complaint that the Loomises have not set forth a cause of action against the Attorneys for fraud, collusion, malicious or tortious conduct. We further decline to extend the doctrine of spoliation of evidence to testimonial evidence. The trial court properly granted judgment on the pleadings in favor of Ameritech and the Attorneys.

Affirmed.

BARNES, J., concurring.

SULLIVAN, J., concurring with opinion.

SULLIVAN, Judge, concurring.

I concur subject to comments in two respects. First, as to Part 3.a., dealing with the Attorney Deceit Statute, I concur but do so upon grounds different than that stated by the majority. The provision for treble damages is applicable in a civil action for deceit. It therefore contemplates an action against an attorney for such deceit. Nevertheless, the damages recoverable under the statute are confined to a deceit practiced upon a *party*. It is not applicable to a non-party witness such as Wright.

Secondly, I respectfully disagree with the majority's categorization of Loomises' use of the term "goliath" in their argument as applied to Ameritech. The word does not rise to the level of name-calling. Although perhaps over-enthusiastic, it is not

of a highly inflammatory nature. *Fortson v. State*, 270 Ind. 289, 385 N.E.2d 429, 433 (1979). Although the terminology was used in the context of forceful and adversarial appellate advocacy, counsel might well, in the future, be more temperate. Once again, however, it does not, in my view, cross over the line into "impertinent, intemperate, scandalous, or vituperative language." *Hite v. Haase*, 729 N.E.2d 170, 175, (Ind.Ct.App.2000).

In any event it is extremely unlikely that any member of this court or of any other appellate tribunal would be in any way influenced either by use of the word "goliath" to describe a large corporation or the term "self-insured" to describe the corporation's insurance status. To be sure, use of the latter term was and is wholly inappropriate,[10] but it is not name-calling.

Subject to the above observations, I concur.

10. The Loomises wholly fail to demonstrate how or why Ameritech's self-insured status has any bearing whatever upon the claims against any of the defendants.