## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jun 09 2017, 9:02 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Andrea L. Ciobanu
Ciobanu Law, P.C.
Indianapolis, Indiana

ATTORNEY FOR APPELLEE

Dylan A. Vigh
Law Offices of Dylan A. Vigh, LLC
Indianapolis, Indiana

IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In re the Paternity of M.D.<br><br>Maria Leyvand,<br><br>*Appellant-Respondent,*<br><br>v.<br><br>Jesse Dickerson,<br><br>*Appellee-Petitioner* | June 9, 2017<br><br>Court of Appeals Case No.<br>49A02-1609-JP-2193<br><br>Appeal from the Marion Superior Court<br><br>The Honorable Timothy W. Oakes, Special Judge<br><br>Trial Court Cause No.<br>49D02-1311-JP-40105 |

**Crone, Judge.**

## Case Summary

Maria Leyvand ("Mother") appeals the trial court's order ("Order") granting Jesse Dickerson ("Father") primary physical custody of their child M.D.[1] She asserts that the trial court abused its discretion in granting Father custody, that the trial court's calculation of child support was clearly erroneous, and that the trial court's apportionment of education expenses violated contract law and her due process rights to notice. Finding no error, we affirm.

## Facts and Procedural History

Mother and Father were in a romantic relationship from November 2010 until October 2013. M.D. was born in February 2012. In November 2013, shortly after the parties separated, Father filed a petition to establish paternity. Both parties filed requests for custody of M.D.

In May 2014, the parties reached an agreement on child custody, parenting time, and child support ("the Mediated Agreement"), in which they agreed to share legal custody of M.D., with Mother having primary physical custody and Father exercising equalized parenting time consisting of seven overnights over a

---

[1] The parties differ as to the identities of the petitioner and the respondent, which may be due to the numerous petitions and motions that have been filed in this case. Because this case was initiated when Father filed a petition to establish paternity and the order being appealed granted Father's petition to change custody, we have designated Father as the petitioner.

two-week period. Appellant's App. Vol. 2 at 21-22.[2] They also agreed that Father would provide weekly child support of $115 and be responsible for 60% of expenses resulting from work-related childcare, preschool, and extracurricular activities. The Mediated Agreement further stated that there was "a protective order in place prohibiting contact between Mother and Father" ("the Protective Order") and that Mother would amend the Protective Order to permit email communication regarding parenting issues. *Id.*

Mother and Father soon experienced difficulties sharing parenting responsibilities, which led to this contentious legal battle. Their communication was "horrible." Tr. Vol. 1 at 136. In 2015, Mother made three reports to Child Protective Services ("CPS") complaining that Father had either physically or sexually abused M.D. *Id.* at 34. CPS investigated each complaint, found the allegations unsubstantiated, and closed the cases. *Id.* at 35, 37, 41. In the first instance, Mother reported that M.D. had second-degree burns. M.D. and Father had just returned from a Florida vacation, and a doctor concluded that M.D. had a sunburn. In the second instance, Mother reported that Father had abused M.D. by scratching her from the neck to the top of her shoulder. Mother obtained an ex parte order of protection

---

[2] Mother's briefs violate our appellate rules in numerous respects. The statement of the facts in Mother's appellant's brief is meager and not in accordance with our standard of review in contravention of Indiana Appellate Rule 46(A)(6). When providing citations for motions, petitions, and orders, Mother often cites to the entire chronological case summary rather than to the page on which the document appears in contravention of Indiana Appellate Rule 22(C). She also places some citations in footnotes rather in the text of her brief in contravention of Appellate Rule 22, which requires parties on appeal to follow the "current edition of a Uniform System of Citation (Bluebook)." Her reply brief includes a statement of the issues and a statement of the facts in contravention of Appellate Rule 46(C).

prohibiting Father from having any contact with M.D. Although CPS found that the allegation of physical abuse was unsubstantiated, Mother refused to dismiss the protective order. Father was unable to see M.D. for approximately three months. The third instance occurred after Father resumed parenting time, and Mother called the police to report that Father sexually abused M.D. The police then notified CPS of the sexual abuse allegation. Mother took M.D. to the hospital, where a rape kit and forensic interview of M.D. were conducted. No evidence of sexual abuse was discovered, and CPS concluded the allegation was unsubstantiated. Father also filed a report with CPS alleging "neglect … due to [Mother's] mental issues." *Id.* at 225. CPS found this allegation unsubstantiated.

[6] In October 2015, Father filed a petition for an emergency hearing on immediate change of custody ("Petition to Change Custody"), in which he alleged that Mother had "refused to permit any contact between Father and [M.D.] for more than ninety days based on false allegations of sexual and physical abuse." Appellant's App. Vol. 2 at 36. He also alleged that the repeated false allegations of abuse were harming M.D.'s emotional and mental well-being and unreasonably interfering with his relationship with her, and he requested immediate custody. In December 2015, Mother filed a motion to renew Protective Order and a petition for modification of parenting time.

[7] In April 2016, the trial court approved the appointment of a guardian ad litem ("GAL"), who timely filed her report with the trial court. In August 2016, the trial court held a two-day evidentiary hearing. Two days before the hearing,

Mother filed her financial declaration form. On the first day of the hearing, Father filed his financial declaration form and child support obligation worksheet. At the hearing, Father requested that the trial court take judicial notice of its file and asked the court to consider the GAL report at the close of the evidence. Tr. Vol. 1 at 65-66. Mother did not object. The GAL testified, and Mother's trial counsel questioned the GAL regarding her report. Tr. Vol. 1 at 66-94. Father testified that his yearly salary is $45,000, with the potential to increase based on his sales. *Id*. at 112.

[8] On August 31, 2016, the trial court entered its Order, granting Father's Petition to Change Custody effective September 2, 2016. The Order grants Father primary physical custody of M.D. and Mother parenting time and provides that the parties will continue to share legal custody. In relevant part, the Order states as follows:

> 3. The evidence submitted before the Court indicates there has been a continuing change in circumstances since the parties['] [M]ediated [A]greement wherein the child, M.D. has "regressed" by all parties' accounts; e.g. the child's [sic] has regressed to soiling herself regularly and requiring diapers and extra attention.

> 4. The Court is quite concerned about the well-being and health of the child. Counseling, [CPS] inquiries, and Riley Hospital exams have revealed nothing to support the claims and concerns of Mother.

> ….

7. Mother's suspicions and concerns with the [F]ather and child relationship are serious in nature. Yet, numerous inquiries by a host of professionals whose only concern is the welfare of the child have led to a lack of any evidence to support those suspicions or concerns. Oddly, Mother spend a great amount of time at the hearing trying to prove a three-year-old physical altercation between her and Father occurred, yet little, it seemed to the Court, on what was in the best interest of [M.D.] This Court has little doubt that Mother is afraid of Father; but that fact has less overall bearing on what is in the best interest of [M.D.] than other factors submitted at the hearing.

8. …. [M.D.] is not adjusting well under Mother and the Court is concerned about [M.D.'s] interrelationship with both parents, but particularly Mother. The parents have been incapable of doing what is best for [M.D.], perhaps putting their own self-interests in front of [M.D.]'s. As a result, the Court is left with the decision and it is not an easy one. This Court, after hearing the evidence and judging the credibility of the many witnesses, believes the mental and physical health of all individuals involved will be best served by [granting Father's Petition to Change Custody].

Appealed Order at 2. The Order also requires Mother to pay weekly child support of $17 and grants Father "a credit on the child support he has paid to Mother retroactive to the date that he filed his [Petition to Change Custody]." *Id*. at 3. The Order requires Father to pay 60% and Mother 40% of M.D.'s education expenses. Finally, the Order denies Mother's motion to renew Protective Order. Mother appeals.

# Discussion and Decision

## Section 1 – The trial court did not abuse its discretion in granting Father's Petition to Change Custody.

[9] Mother first challenges the trial court's decision to grant Father's Petition to Change Custody. Initially, we note that custody modifications are reviewed for an abuse of discretion, with a preference for granting latitude and deference to our trial judges in family law matters. *Kirk v. Kirk*, 770 N.E.2d 304, 307 (Ind. 2002). An abuse of discretion occurs "when the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court." *L.C. v. T.M.*, 996 N.E.2d 403, 407 (Ind. Ct. App. 2013). Here, the trial court issued findings sua sponte:

> When the trial court enters findings sua sponte, the specific findings control only as to the issues they cover, while a general judgment standard applies to any issue upon which the court has not found. The specific findings will not be set aside unless they are clearly erroneous, and we will affirm the general judgment on any legal theory supported by the evidence. A finding is clearly erroneous when there are no facts or inferences drawn therefrom that support it. In reviewing the trial court's findings, we neither reweigh the evidence nor judge the credibility of the witnesses. Rather, we consider only the evidence and reasonable inferences drawn therefrom that support the findings.

*Julie C. v. Andrew C.*, 924 N.E.2d 1249, 1255-56 (Ind. Ct. App. 2010) (citations omitted).

[10] Modification of child custody in paternity cases is governed by Indiana Code Section 31-14-13-6, which provides that a trial court may *not* modify a child

custody order unless "(1) modification is in the best interests of the child; and (2) there is a substantial change in one (1) or more of the factors that the court may consider under section 2 of this chapter." Section 31-14-13-2[3] provides,

> The court shall determine custody in accordance with the best interests of the child. In determining the child's best interests, there is not a presumption favoring either parent. The court shall consider all relevant factors, including the following:
>
> (1) The age and sex of the child.
>
> (2) The wishes of the child's parents.
>
> (3) The wishes of the child, with more consideration given to the child's wishes if the child is at least fourteen (14) years of age.
>
> (4) The interaction and interrelationship of the child with: (A) the child's parents; (B) the child's siblings; and (C) any other person who may significantly affect the child's best interest.
>
> (5) The child's adjustment to home, school, and community.
>
> (6) The mental and physical health of all individuals involved.
>
> (7) Evidence of a pattern of domestic or family violence by either parent.

---

[3] The trial court cited Indiana Code Section 31-17-2-8, which governs custody orders in dissolution and legal separation cases. However, we find no error because that statute is substantively identical to Section 31-14-3-2.

[11] Mother phrases her first claim of error as follows: "It is substantive, procedural and due process error for the trial court to use the domestic violence perpetrated by [Father] against Mother and as a factor in modifying custody in Father's favor." Appellant's Br. at 14. As best we can discern, there are several subparts to this claim. As part of this claim, she contends that that trial court erred in failing to find that, based on the principles of res judicata and collateral estoppel, the Protective Order established that Father committed domestic violence against Mother. We note that the Protective Order proceedings were under a different cause number and were presided over by a different judge. Mother did not ask the trial court to take judicial notice of the Protective Order, and it is not in the record before us. Mother does not explain the finding of domestic violence that supported the issuance of the Protective Order. Mother's argument on this point is too poorly developed and confusing to be considered cogent for appellate review. We conclude that her failure to present cogent argument results in waiver of this issue. *See* Ind. Appellate Rule 46(A)(8)(a) (requiring that contentions in appellant's brief be supported by cogent reasoning and citations to authorities, statutes, and the appendix or parts of the record on appeal); *Loomis v. Ameritech Corp.*, 764 N.E.2d 658, 668 (Ind. Ct. App. 2002) (failure to present cogent argument waives issue for appellate review), *trans. denied*.

[12] Another subpart to Mother's first claim of error is that the trial court failed to comply with Section 31-14-13-2 by failing to consider prior domestic violence. We disagree. Our review of the Order shows that in determining whether a

change in custody was in M.D.'s best interests, the trial court considered prior domestic violence as well as other relevant factors as required by Section 31-14-13-2. The trial court expressly acknowledged that Mother was afraid of Father, but concluded that "that fact has less overall bearing on what is in the best interest of the child than *other factors* submitted at the hearing." Appealed Order at 2 (emphasis added).[4] Mother's argument ignores the other factors that the trial court is required to consider under Section 31-14-13-2. The trial court found that M.D. had "regressed" by soiling herself regularly and requiring diapers and extra attention and that M.D. was not adjusting well under Mother. *Id*. The trial court also considered Mother's allegations that Father was physically and sexually abusing M.D. and found no evidence to support them. *Id*. The trial court stated that it was concerned about M.D.'s interrelationship with her parents, especially Mother. It further found that they have been incapable of doing what is best for M.D. and that the mental and physical health of all individuals involved would be best served by changing primary physical custody. *Id*. at 3-4. We conclude that the trial court considered

---

[4] The trial court did not ignore Mother's fear of Father. Although the trial court denied Mother's petition to renew the Protective Order, it strictly limited the parties' contact to communication involving M.D. via the Family Wizard, a website for scheduling parenting time. Appealed Order at 4. The Order states that the "parties should NOT communicate directly or indirectly with each other regarding any personal matters or any issues not related to the welfare of M.D., except in emergencies." *Id*.

multiple relevant factors and complied with Section 31-14-13-2.[5]

[13] Next, Mother contends that the trial court erred in relying on the GAL's report because it was not offered into evidence. Her argument is without merit because the GAL timely filed her report, the trial court took judicial notice of its file, the GAL testified, and Mother's trial counsel vigorously cross-examined her regarding her report. Mother also argues that the trial court erred in relying on the GAL's report because the GAL was patently biased against her. This argument goes to the weight of the GAL's testimony and report rather than the propriety of the trial court's consideration of it. We find no error here.

[14] Finally, Mother challenges findings 7 and 8, arguing that they are unsupported by the evidence. However, her arguments are merely invitations to reweigh the evidence, which we must decline. In sum, we are unpersuaded that the trial court abused its discretion in granting Father's Petition to Change Custody.

## Section 2 – The trial court's child support calculation is not clearly erroneous.

[15] Mother asserts that the trial court's calculation of child support is unsupported by the evidence. We observe that

---

[5]   Mother contends that the trial court used Father's domestic violence as a factor in support of modifying custody in Father's favor. Appellant's Br. at 14. In support, she cites paragraph 7 of the Order, in which the trial court stated that she spent a great deal of time trying to prove that domestic violence had occurred rather than on what was in M.D.'s best interest. We fail to see how the trial court's comment on Mother's trial strategy leads to a conclusion that the trial court used Father's violence to justify granting Father primary physical custody of M.D.

[a] trial court's calculation of child support is presumptively valid. Reversal of a trial court's child support order deviating from the appropriate guideline amount is merited only where the trial court's determination is clearly against the logic and effect of the facts and circumstances before the trial court. Upon the review of a modification order, only evidence and reasonable inferences favorable to the judgment are considered. The order will only be set aside if clearly erroneous.

*Bogner v. Bogner*, 29 N.E.3d 733, 738 (Ind. 2015) (citations, quotation marks, and brackets omitted).[6]

[16] The Indiana Child Support Guidelines ("the Guidelines") facilitate the trial court's calculation of each parent's share of the child support. *In re Paternity of G.R.G.*, 829 N.E.2d 114, 118-19 (Ind. Ct. App. 2005). There is a "rebuttable presumption that the amount of the award which would result from the application of [the Guidelines] is the correct amount of child support to be awarded." Ind. Child Support Guideline 2. "When fashioning a child support order, the trial court's first task is to determine the weekly gross income of each parent." *Ratliff v. Ratliff*, 804 N.E.2d 237, 245 (Ind. Ct. App. 2004). The Guidelines provide for a child support worksheet to be completed and filed with the trial court, signed by the parties and supported by documentation. Ind. Child Support Guideline 3(B). "If the parties cannot agree on the weekly gross income figures to be included on the worksheet, then each party may submit its

---

[6] In her appellant's brief, Mother relies on an unpublished memorandum decision for her standard of review in contravention of Indiana Appellate Rule 65(D), which provides that "a memorandum decision shall not be regarded as precedent and shall not be cited to any court except by the parties to the case to establish *res judicata*, collateral estoppel, or law of the case."

own worksheet and documentation, from which the trial court can determine the parties' respective weekly gross incomes and compute the appropriate child support amount." *Paternity of G.R.G.*, 829 N.E.2d at 118-19 (citing Ind. Child Support Guideline 3(B), cmt. 1). "Each party bears the burden of justifying the incomes used in his or her own worksheet." *Id*. at 119.

[17] Here, the Order requires Mother to pay weekly child support of $17 based on Father's child support worksheet. His child support worksheet shows that his weekly gross income is $875 and Mother's is $290. Appealed Order at 6.[7] Mother asserts that there is no evidence to support Father's income because he failed to timely file his worksheet in accordance with the local rules and his worksheet was not properly admitted into evidence. Although Father filed his worksheet after the local deadline, Mother also filed her financial disclosures after the deadline. Mother acknowledges that Father submitted the worksheet on the first day of the hearing, requested that the trial court take judicial notice of its file, and testified that he earns a base salary of $45,000 per year and a possible commission if his sales reach a certain threshold. Therefore, we find

---

[7] Father's percentage share of the parties' total weekly income is 75.11% and Mother's is 24.89 %. Appealed Order at 6. Mother's basic child support obligation is $42.81. *Id*. Mother is provided parenting time credit for 101-105 overnights, and therefore her recommended child support obligation is $17. *Id*. We observe that $17 is approximately 6% of Mother's weekly income.

Mother's argument without merit and conclude that the trial court's calculation of Mother's child support obligation was not clearly erroneous.[8]

## Section 3 – Mother's contractual and due process rights were not violated when the trial court apportioned school expenses.

[18] Mother argues that the trial court erred by ordering Father to pay 60% and Mother 40% of M.D.'s education expenses. In August 2016, before the evidentiary hearing was held, the parties reached an agreement with the assistance of a parental coordinator ("the 2016 Agreement"), which addressed M.D.'s schooling on a temporary basis. The 2016 Agreement provided that "[b]ecause school will start before a ruling is expected, the parents agree to the following terms *on a temporary basis*" and "[e]ach parent reserves the right to seek different terms at the hearing." Appellant's App. Vol. 3 at 45 (emphasis added). The parties agreed that M.D. would attend a Montessori school and that Father would be responsible for 70% and Mother 30% of the school's costs incurred before the trial court's final ruling. *Id.* at 46. Mother contends that neither party argued that the allocation of expenses should be any different from the 2016 Agreement. Mother's argument seems to be that the 2016 Agreement therefore constituted a binding contract from which the trial court could not deviate and that she was deprived due process because she was not given notice

---

[8] Mother makes other claims of error regarding Father's child support worksheet, but she fails to articulate how any such errors affect the amount of her recommended child support obligation. Therefore, we need not address those claims. Mother also contends that the trial court erred in granting Father child support credit retroactive to the date that he filed his petition to change custody. Mother fails to present cogent argument on this issue, and therefore it is waived. *See* Ind. Appellate Rule 46(A)(8)(a); *Loomis*, 764 N.E.2d at 668.

that its terms were going to be modified. Appellant's Br. at 31. The 2016 Agreement itself provides that it is temporary, and therefore Mother's arguments are misplaced.[9] Based on the foregoing, we affirm the Order.

[19] Affirmed.

Baker, J., and Barnes, J., concur.

---

[9] In her reply brief, Mother argues for the first time that the trial court's apportionment of education expenses requires her to pay a higher share than she would be required to pay pursuant to the Guidelines and that there was no consideration of less costly education of the same or higher quality. Appellant's Reply Br. at 14-15. "New arguments in a reply brief are inappropriate and will not be considered on appeal." *Crist v. K-Mart Corp.*, 653 N.E.2d 140, 144 (Ind. Ct. App. 1995); *see also Kelly v. Levandoski*, 825 N.E.2d 850, 858 (Ind. Ct. App. 2005) ("[A]ny argument an appellant fails to raise in his initial brief is waived for appeal."), *trans. denied*; Ind. App. Rule 46(C) ("No new issues shall be raised in the reply brief.").